LAI CHUN CHAN JIN et al., Respondents, v BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Appellants.

First Department, March 10, 1983

**APPEARANCES OF COUNSEL**

*Scott Mollen* of counsel (*Graubard Moskovitz McGoldrick Dannett & Horowitz,* attorneys), for Overseas Chinese Development Corporation, Inc., appellants.

*Michael Gage* of counsel (*Carolyn E. Demarest* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for the Board of Estimate of the City of New York and another, appellants.

*Rose Ann Magaldi* of counsel (*Roger K. Evans, Arthur J. Soong* and *Norman Siegel* with her on the brief; *Joyce Moy,* attorney), for petitioners.

*Margaret Fung* and *Stanley Mark* for Asian American Legal Defense and Education Fund, *amicus curiae.*

**OPINION OF THE COURT**

BLOOM, J.

This proceeding involves an application by petitioners to invalidate the amendment of the zoning resolution to create a new Special Manhattan Bridge District, the amendment of the zoning map to reflect the change and the issuance of a special permit to Overseas Chinese Development Corporation, Inc. (OCD). Special Term granted the application holding that the regulations adopted by the City Planning Commission (CPC) to implement section 197-c of the New York City Charter known as the Uniform Land Use Review Procedure (ULURP) were unconstitutional as violative of the due process clause of the Federal Constitution for two reasons: first, the publication of actions designed to effect the changes in question was published in obscure city publications which failed to provide notice to those entitled thereto; and, secondly, the publication in English to a community which is basically Chinese speaking is inadequate on its face. We disagree. Accordingly, we reverse. For reasons hereinafter stated we remand the matter back to the appropriate city authorities for further consideration of the permit hitherto issued to OCD.

In 1975 the Charter Revision Commission proposed amendment of the New York City Charter to provide greater participation by local communities in the development and use of land. It suggested augmenting the powers of community boards, requiring that they shall be the initial bodies to take action on land use applications affecting their districts, and providing for mandatory hearings before them. Their recommendation, which was adopted by the city electorate at the November, 1975 general election is embodied in section 197-c of the City Charter. Pursuant to the mandate of subdivision g of that section the City Planning Commission adopted guidelines which are here the subject of attack. These provide (§ 4.030) that notice of the time, place and subject of a public hearing before a local board shall be given in the following manner:

"(a) for all actions subject to this land use review procedure, by publication in *The City Record* for 10 days of publication immediately preceding and including the date of hearing;

"(b) for all actions, by publication in an issue of the *Comprehensive City Planning Calendar* distributed not less than 10 calendar days prior to the hearing".

With this as background we turn to the fact situation which gave rise to the conflict now before us. In September, 1979 the CPC published a study addressed to the residential and commercial needs of the Chinatown district of Manhattan. It noted the overcrowded conditions of tenements and the lack of open space consequent upon the concentration of attached tenement housing. It also noted the lack of new construction which resulted from the density regulations contained in existing zoning regulations that required that construction to replace existing units would have to contain fewer units than those torn down. In the aftermath of publication of the study OCD, which owned a plot fronting on Henry and Madison Streets and lying between Catherine and Market Streets and which was desirous of erecting a project known as East-West Towers, applied for a rezoning of the property owned by it. After study and consideration CPC rejected the application.

Following consideration of the study the Department of City Planning drafted a proposal setting up a Special Manhattan Bridge District (SMBD). Its intent was to create a new special zoning district which would preserve the residential character of the neighborhood, provide an incentive for the creation of new community facilities, encourage an income mix among residents of a new project to be erected and promote the rehabilitation and improvement of existing older housing stock.

In accordance with the requirements of section 197-c of the New York City Charter the proposal of the Department of City Planning was submitted to the affected local community board, Community Board #3 (CB 3) and to the CPC for comments and suggestions. Thereupon the CPC drafted a proposed zoning map change to reflect the changes

wrought by the amendment to the zoning resolution suggested by the Department of City Planning.

On January 30, 1981 OCD submitted an application to CPC for a permit under the proposed zoning change creating the SMBD. On March 30, 1981 the zoning map change and the special permit application were certified as complete, as required by ULURP guidelines and forwarded to CB 3. After publication in the City Record and the Comprehensive City Planning Calendar as required by section 4.030 of the ULURP guidelines, CB 3 held a public meeting on April 28, 1981. Following consideration of the proposals CB 3 approved the zoning map amendment and the special permit application by substantial margins.

On May 20, 1981 CPC scheduled a public hearing on the zoning map change and the special permit application for June 3, 1981. In addition, and as required by section 200 of the City Charter, CPC proposed that the zoning resolution be 'amended to provide for the Special Manhattan Bridge District,and scheduled a public hearing on the proposal for June 3, 1981, the same day as the scheduled hearing on the proposed map change and the proposed special permit. Notice was published in the City Record and the Comprehensive City Planning Calendar in accordance with section 4.030 of the ULURP guidelines. The public hearing was held on the specified day. OCD and three community organizations appeared and spoke in favor of all proposals. No one appeared in opposition, and the resolutions approving the zoning map changes, the amendment of the zoning resolution and the special permit were adopted. On June 26, 1981 the resolutions and reports of the CPC on the three matters before it were filed with the Board of Estimate.

Initially, the Board of Estimate scheduled a public hearing on the action of CPC for July 23, 1981. Notice of the hearing was published as required by law. However, on that day the matter was laid over to August 20, 1981. On August 20, after a public hearing, the Board of Estimate by separate resolutions, approved creation of the SMBD, the zoning map changes and the granting of the special permit to OCD.

On December 21, 1981 petitioners brought an application pursuant to CPLR article 78 seeking annulment of the resolutions of the Board of Estimate. Respondents contended that the action sought to be annulled was legislative in nature and was not subject to review in an article 78 proceeding. It also cross-moved to adjourn the matter on the ground that an inquiry conducted by the Department of Investigation had unearthed proof that OCD had succeeded in the removal of tenants in the buildings to be demolished, some of whom are petitioners in the current proceeding, by harassment and intimidation and that the respondents desired to consider further the special permit theretofore granted to OCD for the purpose of determining whether it should be withdrawn. Special Term agreed that an article 78 proceeding was not the proper vehicle for determination of the issues. However, it concluded that inasmuch as all the interested parties were before the court and the sole issue posed by petitioners was a challenge to the constitutionality of legislative action it was appropriate, under CPLR 103 (subd [c]) to treat the application as one for declaratory relief, citing *Matter of Kovarsky v Housing & Dev. Admin. of City of N. Y.* (31 NY2d 184). It denied respondents cross motion for an adjournment.

## I

The crux of petitioners' argument may be summed up simply. They contend that where notice is required to be given the notice must be given in such fashion as will bring it to the attention of the person required to be notified. It is further contended that the publication of the notice in "obscure publications" such as the City Record and the Comprehensive City Planning Calendar, both published in English, a language alien to most of the petitioners, was, in effect, no notice. In support of their contention petitioners cite a host of cases, none of which support its position. Indeed, if anything, they support the position of respondents.

Procedural due process is designed to insure that there will be no deprivation of rights otherwise created without notice and an opportunity to be heard (*Mullane v Central Hanover Trust Co.,* 339 US 306). It is required where it is

designed to protect some liberty or property interest (*Board of Regents v Roth*, 408 US 564; *Mathews v Eldridge*, 424 US 319). The Fourteenth Amendment does not create protected property interests. Its purpose is to provide procedural safeguards to insure that rights otherwise created or existent are protected (*Board of Regents v Roth, supra*, p 569; *Goss v Lopéz*, 419 US 565, 572-573). Thus, notice and a hearing is required where a statutory entitlement is affected (*Goldberg v Kelly*, 397 US 254; *Mathews v Eldridge, supra; Goss v Lopez, supra*); or where governmental tenured employment is at stake (*Connell v Higginbotham*, 403 US 207; *Slochower v Board of Educ.*, 350 US 551); or where revocation of a driver's license is concerned (*Bell v Burson*, 402 US 535), or where a party is deprived of the right to litigate a charge that he has been discriminated against in employment (*Logan v Zimmerman Brush Co.*, 455 US 422). In each of these cases there was a specific identifiable right, the loss of which resulted in computable financial damage.

Here, however, the statute created no identifiable property right. It sought to expand and, in theory at least, to make more effective the democratic process by giving the members of a community the right to participate in the use to be made of land in that community. The legislative grant of this right gave petitioners no protected property right in land use in the community. Indeed, petitioners had no greater property interest in the community land use after the enactment of the statute than they had prior thereto. All that the statute created was a right to be heard, no more and no less. To implement that right to be heard the statute delegated to the CPC the enactment of guidelines whereby notice would be given to those entitled thereto. Since the statute which created the limited right also provided that the CPC adopt guidelines for its implementation and the implementation was in accord with the statute, there could be no violation of procedural due process.

## II

The second issue presented is whether notice given in English, to a community in which a language other than English is the language in common use, is sufficient to

meet the requirement for notice specified in section 197-c of the City Charter. Special Term was of the opinion that only notification in a Chinese language newspaper circulated in the affected community would suffice.

To this contention the answers are multiple. The first is purely practical. While not mentioned by either of the contending parties, it is, as a matter of observation by members of this bench, the general rule that legal notices published in foreign language newspapers are published in the English language. Thus, the publication of a notice in English in a Chinese language newspaper would afford no greater notice than publication in the City Record and in the Comprehensive City Planning Calendar.

Secondly, ours is basically an English speaking society and that is the national language. It is appropriate, therefore, that all legal notices required by law to be published, be published in that language. It would place an unbearable burden upon government if, before publication a census were required to determine which were the tongues spoken in the community for the purpose of determining the foreign language newspapers in which it was required to publish.

Finally, and this we think is controlling, the very statute which sets forth the requirement for notice delegates to CPC the authority to fix guidelines for giving the notice. The guidelines were fixed in conformity with the power thus delegated and there is no contention that they were not followed.

By consequence, we hold that the notice, published in English in the publications specified in, and in conformity with the guidelines, met the statutory requirements.

### III

It follows that there must be a reversal. Ordinarily, that would end the matter. However, we have noted that at Special Term respondents requested an adjournment upon the ground that the inquiry conducted by the Department of Investigation indicated improper conduct on the part of OCD. In respondents' brief and in the argument, we were informed that the special permit issued to OCD has since been revoked. In these circumstances, we think that a

remand to the appropriate city authorities is called for so that they may give the situation such further consideration as they deem proper.

Accordingly, the judgment of the Supreme Court, New York County (GAMMERMAN, J.), entered September 28, 1982 is reversed on the law, without costs, the creation of the Special Manhattan Bridge District and the amendment of the zoning resolution and the zoning map to reflect the creation of such district is declared to be a constitutional and valid exercise of legislative power, and the matter is remanded to the appropriate city authorities for such action as may be proper.

Ross, J. P., Asch, Fein and Lynch, JJ., concur.

Judgment, Supreme Court, New York County, entered on September 28, 1982, unanimously reversed on the law, without costs and without disbursements, the creation of the Special Manhattan Bridge District and the amendment of the zoning resolution and the zoning map to reflect the creation of such district is declared to be a constitutional and valid exercise of legislative power, and the matter remanded to the appropriate city authorities for such action as may be proper.