*274 OPINION OF THE COURT
Emily Jane Goodman, J.
Plaintiffs are two tenants who have been living in a loft at 119 West 25th Street since 1977. Their application for a determination of loft occupancy (commonly referred to as a "grandfathering” application) was rejected because it was submitted more than one year after the filing deadline of June 21, 1983. With the application,[1] plaintiffs have sought to legalize their residential occupancy in an area zoned for manufacturing use, pursuant to the Loft Law (L 1982, ch 349, eff June 21, 1982; Multiple Dwelling Law art 7-C, which provides for the legalization of certain buildings defined as interim multiple dwellings [IMD]). The June 21, 1983 deadline is contained in New York City Zoning Resolution § 42-133 (a) (Zoning Resolution). Plaintiffs seek a declaratory judgment which, inter alia, declares that the Zoning Resolution is unconstitutional to the extent that it imposes deadlines for the filing of a "grandfathering” application, that said Resolution is preempted by State law; and that the plaintiffs were deprived of due process by the failure of the City Planning Commission and the Department of City Planning to provide adequate notice of the grandfathering application deadlines to plaintiffs. Plaintiffs seek a judgment directing defendant Sturz to accept and approve plaintiffs’ application, which previously was rejected as untimely filed.
This action was commenced in March 1985 as an article 78 proceeding to challenge the rejection of plaintiffs’ "grandfathering” application. By order of this court (Wallach, J.), dated June 24, 1985, this proceeding was converted into an action for a declaratory judgment, and plaintiffs were granted leave to serve a supplemental summons and complaint against Herbert Sturz, as Chairman of the New York City Planning Commission, and as Director of the Department of City Planning (Sturz), and to join the Board of Estimate and the City of New York, as additional defendants. Although the petition originally filed herein challenged the time limitation in section 42-133 of the Zoning Resolution relied upon by respondents, the supplemental complaint also challenges the time limitation contained in section 15-021 of that Resolution.
It is alleged in the supplemental complaint (the complaint) *275 that the June 21, 1983 deadline imposed by sections 15-021 and 42-133 of the Zoning Resolution, and the amendments thereto, adopted by the defendant Board of Estimate are unconstitutional, contrary to law, arbitrary and unreasonable, and improperly adopted. The challenged deadline allegedly deprives plaintiffs of the enjoyment of property rights granted plaintiffs by the State Legislature’s enactment of the Loft Law.
THE APPLICABLE SECTION OF THE ZONING RESOLUTION
According to plaintiffs’ application, they live in the "Ml-5” zone, a manufacturing district, also known as Northeast Chelsea. Defendants’ answering papers assert that the building in question is located in the Ml-6 zone, where applications such as the one here are governed by section 42-133 of the Zoning Resolution, and not by section 15-021.
The distinction respondents make between section 42-133 and section 15-021 of the Zoning Resolution is erroneous and without any practical effect. Both sections are in issue herein. Under the challenged amendment to section 42-133 of the Zoning Resolution, the Chairman of the City Planning Commission is authorized to approve residential use in a building located in the manufacturing districts designated as Ml-5 or Ml-6 districts, as follows: "(a) In Ml-5 and Ml-6 districts located within the rectangle formed by West 23rd Street, Fifth Avenue, West 31st Street, and Eighth Avenue, no new dwelling units shall be permitted. However, dwelling units which the Chairman of the City Planning Commission determines were occupied on September 1, 1980 shall be a permitted use provided that a complete application for a determination of occupancy is filed by the owner of the building or the occupant of a dwelling unit in such building not later than June 21, 1983. For the purposes of Article 7C of the New York State Multiple Dwelling Law, such a determination of residential occupancy on September 1, 1980, shall be deemed to permit residential use as-of-right for such dwelling units.” (Emphasis in original.) Section 15-021 (c) of the Zoning Resolution includes the identical language.
PREEMPTION BY STATE LAW
One of plaintiffs’ arguments is that New York State law (the Loft Law) preempts the local zoning legislation, which imposed the June 1983 "grandfathering” deadline. It is clear *276 from the language of the Loft Law that the State Legislature did not intend to totally preempt this field. The legislative findings set forth in the Loft Law specifically contemplate the "intervention” of local governments, in addition to the State government, in order to implement the purposes and provisions of article 7-C: "the intervention of the state and local governments is necessary to effectuate legalization, consistent with local zoning resolution, of the present illegal living arrangements” (Multiple Dwelling Law § 280). Further, the Multiple Dwelling Law, in defining an IMD, specifically refers to the local zoning resolution and the administrative planning agency. Multiple Dwelling Law, article 7-C, § 281 (2) says: "2. Notwithstanding the definition set forth in subdivision one of this section, the term 'interim multiple dwelling’ includes only (i) buildings, structures or portions thereof located in a geographical area in which the local zoning resolution permits residential use as of right, or by minor modification or administrative certification of a local planning agency”.
In addition, action by localities was expressly contemplated under Multiple Dwelling Law § 286 (13), which provides for the application of the Emergency Tenant Protection Act of 1974 (McKinney’s Úncons Laws of NY § 8621 et seq.; L 1974, ch 576, § 4, as amended) to buildings occupied by residential tenants qualified for protection of the Loft Law upon a "declaration of emergency by the local legislative body.” Thus, a local law designed to implement the Loft Law will not be struck down on the basis of preemption unless it is inconsistent with the State Constitution or the Loft Law itself, or any other general law (see, Matter of Ames v Smoot, 98 AD2d 216 [2d Dept 1983]). In fact, the Loft Law was adopted at the formal request of the City of New York (see, 1982 McKinney’s Session Laws of NY, Mem of Legis Representative of City of NY [City’s Legislative Memorandum], at 2479-2485), to create a Loft Board and to otherwise create a framework to legalize dwellings consistent with the local zoning resolution of the City of New York. In essence, the Loft Law was designed to formalize and extend the procedural framework already being implemented by the city to legalize loft dwellings. However, with the adoption of the Loft Law, the city became obligated to act in a manner consistent with that law.
THE NOTICE REQUIREMENT
The Loft Law became effective on June 21, 1982. At that *277 time, under sections 15-021 and 42-133 of the Zoning Resolution, a tenant’s "grandfathering” application had to be filed by July 31, 1982. Given that the effective date of the Loft Law was less than six weeks before the "grandfathering” deadline date, the City Planning Commission suggested that the period for grandfathering was insufficient because
"many tenants were unwilling to identify themselves as illegal without being assured of protection against eviction. This protection was obtained in June 1982 upon adoption by the State of New York of Article 7C of the Multiple Dwelling Law. The six weeks then remaining prior to July 31st were insufficient for many tenants to file applications for legalization.
"Therefore, to ensure that illegal residential tenants prior to September 1, 1980 receive the protection intended under both the Zoning Resolution and Article 7C, the date for filing applications will be extended to June 21, 1983, the date by which, pursuant to Article 7C, an owner/landlord must take all reasonable steps necessary to receive an alteration application from the Department of Buildings”. (City Planning Commn Rep & Resolution to Bd of Estimate [cal No. 43, Jan. 19, 1983].)
There are two interrelated notice requirements which may be involved in this case. On a broad level, there are constitutional considerations of procedural due process, requiring that there be no deprivation of rights without those affected having notice and an opportunity to be heard. (Mullane v Central Hanover Trust Co., 339 US 306 [1950].) Notice and a hearing is required when a statutory entitlement is affected (Goldberg v Kelly, 397 US 254 [1970]). The Loft Law contains no time limits for legalization of residential living in lofts; it is the Zoning Resolutions which impose such time limits. Plaintiffs argue that because the amendments to the Zoning Resolution restrict the rights given by the Loft Law, by imposing a time limit and an obligation to file an application, constitutional due process requirements are in effect here. "Courts should not decide constitutional questions when a case can be disposed of on a nonconstitutional ground” (Matter of Beach v Shanley, 62 NY2d 241, 254 [1984], citing People v Felix, 58 NY2d 156 [1983]; People v Carcel, 3 NY2d 327 [1957]; Matter of Peters v New York City Hous. Auth., 307 NY 519 [1954]; Holroyd v Town of Indian Lake, 180 NY 318 [1905]). At present this court need not reach the question of whether the notice given was constitutionally sufficient, because whether *278 or not it could be said that the statute in question created a protected property right, at a minimum, the statute created a right to be heard since it was designed to set up a mechanism for establishing a vested property right. To implement the right to be heard the statute delegated to the locality the burden of certifying the status of loft tenants, and of certifying the IMD status of buildings.
Respondents acknowledge that any changes to the text of the Zoning Resolution which do not constitute a designation of a zoning district or the issuance of a special permit must follow the procedures set forth in New York City Charter § 200 (a) which provides, in part: "Before adopting of any such resolution, the commission shall notify any community board or borough board affected by the resolution and shall afford persons interested an opportunity to be heard at a time and place to be specified in a notice of hearing to be published in the City Record for the ten days of publication of the City Record immediately prior thereto setting forth in general terms the nature of the proposed resolution and a statement of the place at which the entire resolution may be examined. Any such resolution shall be filed with the secretary of the board of estimate within five days from the day of its adoption.” (NY City Charter § 200 [a] [l].)[2]
THE 10-DAY REQUIREMENT
The notice of the City Planning Commission published in the City Record consisted of 10 notices of a meeting of the City Planning Commission scheduled for January 5, 1983 to review resolutions regarding the proposed amendments to the Zoning Resolution. Nine of those notices were published in the City Record on the nine days of publication immediately preceding the meeting (from Dec. 21, 1982 through Jan. 4, 1983). On January 5, 1983, the date of the hearing, a 10th notice was published. The language of section 200 (a) (1) is unambiguous: The notice is to be published for the "ten days of publication * * * immediately prior” to the hearing (emphasis added). The notice in question here was one day short in that the 10th notice, published on the date of the hearing itself, was by definition not published on a date prior to the hearing.
CONTENT OF THE NOTICES
Review of the contents of the notices of the proposed amend *279 ment to Zoning Resolution § 15-021 (labeled "Special Use Regulations”) reveals a series of disturbing errors which, at least, rendered the notice inaccurate and incomplete. More likely, the notices were incomprehensible, as suggested by the fact that no speakers appeared at the hearing and it was closed without testimony. (City Planning Commn Rep & Resolution to Bd of Estimate [cal No. 43, Jan. 19, 1983].) Considering the public’s interest in the subject matter, the report that no one appeared at the January 5, 1983 hearing confirms what an examination of the notice suggests — the notice was insufficient.
The language of the proposed amendment contained in the City Record omits reference to the "application” which was to be filed by July 21, 1983. It indicates that no new dwelling units shall be permitted in Ml-5 and Ml-6 districts located within the rectangle formed by West 23rd Street, Fifth Avenue, West 31st Street and Eighth Avenue, except that "a determination of residential occupancy on September 1, 1980, shall [be] deemed to permit residential use as-of-right for such dwelling units.” The notice in The Record includes, in brackets, the language intended to be deleted from the old version of the Zoning Resolution, which required "grandfathering” applications to be filed by "not later than July 31, 1982.” The amended language is in bold print. The notice reads, in relevant part, as follows:
"15-021
"Special Use Regulations * * *
"(c) In Ml-5 and Ml-6 districts located within the rectangle formed by West 23rd Street, Fifth Avenue, West 31st Street and Eight [sic] Avenue, no new dwelling units shall be permitted. However, dwelling units which [were occupied on September 1, 1980 are a permitted use provided the Board of Standards and Appeals finds that:
"(i) such dwelling units comply with the requirements of Section 15-22 (Number of Permitted Dwelling Units) and Section 15-23 (Light and Air Provisions), and
"(ii) An application to permit such use is filed with the Department of Buildings (prior to January 4, 1982) not later than July 31, 1982. Such application may be filed by the owner of the building or the occupant of the dwelling unit] The [sic] Chairman of the City Planning Commission determines were occupied on September 1, 1980 shall be a permitted use [sic] is filed by the owner of the building or the *280 occupant of a dwelling unit in such building not later than June 21, 1983. For the purposes of Article 7C of the New York State Multiple Dwelling Law, such a determination of residential occupancy on September 1, 1980 shall [sic] deemed to permit residential use as-of-right for such dwelling units.” (Emphasis in original.)
In view of the omissions and typographical errors contained in the above-cited notice of the proposed amendment to section 15-201 of the Resolution, in addition to the failure to publish for the requisite number of days, it cannot be said that adequate notice was provided by respondents of petitioners’ obligation to file a "grandfathering” application by June 21, 1983, in order to "legalize” their residential quarters.
New York City Charter § 200 (a) (1) includes the requirement that the notice begin with a description "in general terms” of the nature of the resolution to be discussed. The portion of the challenged notice contains the following general terms: "in the matter of amendments, pursuant to Section 200 of the New York City Charter, of various sections of the Zoning Resolution of the City of New York, relating to the conversion of non-residential buildings to residential use.”
While the above description might comply with some definition of "general terms,” it does not save the notice in question here. Notice of a change in zoning must be clear and unambiguous and readily intelligible by the intended reader — the average citizen at large (see, Matter of Gardiner v Lo Grande, 92 AD2d 611 [2d Dept 1983], affd 60 NY2d 673). The required general notice must be designed to reach the affected community (see, Gardiner, supra, at p 613; Lai Chun Chan Jin v Board of Estimate, 92 AD2d 218 [1st Dept 1983], affd 62 NY2d 900 [1984]). To the extent that the statute does not define the nature of the notice, the notice will be upheld in any form that is reasonably adopted to inform the public generally that the application will be heard (Lai Chun Chan Jin, supra, p 902). However, where there is doubt as to the sufficiency of the notice that doubt will be resolved against the notice (see, Gardiner, supra, p 612).
The notice which was published here is insufficient to make tenants aware that their recently acquired and highly publicized rights under the newly passed Loft Law were about to be abridged by having a time limit imposed, and that they were now required to take some action. Under the Loft Law, it was the landlord, not the tenant, who was given the burden of *281 filing applications designed to legalize loft residency. The challenged notices omitted any reference to the Loft Law and to the fact that the time limitations in the Zoning Resolution were intended to implement the Loft Law and would have the effect of imposing certain duties on tenants and of restricting a tenant’s loft occupancy rights if a timely "grandfathering” application was not filed. In other words, the tenants were not adequately notified that under the proposed zoning amendments they were required to take affirmative steps to obtain rights which they thought had been guaranteed under the Loft Law.
The City’s Legislative Memorandum in support of the Loft Law describes the loft bill as a "status bill” designed to protect "loft pioneers” as follows: "The bill when enacted will take a 'snapshot’ of those people eligible for protection under this article. The bill is directed at protecting those loft pioneers of the arts community that have played such an important role in the development of loft areas.” (1982 McKinney’s Session Laws of NY, at 2482.) No mention is made in that memorandum of a requirement that tenants file timely "grandfathering” applications in order to obtain the Loft Law’s protections. While the failure to include such application requirements in the express language of the Loft Law does not in itself bar the Zoning Resolution which imposes such a requirement, clearly tenants are entitled to adequate notice of such requirements, and such requirements must be reasonable and designed to implement the Loft Law’s purposes.
In evaluating the defendants’ contentions that proper procedures were followed in adopting the challenged amendments, it must be noted that the defendants’ papers contain conclusory allegations insufficient to support that contention, and those contentions are contradicted by the facts discussed above.
The cumulative effect of the defects in notice is to render the challenged time limits unenforceable. In the absence of a requirement that an application be filed by a certain date, the broader language in Multiple Dwelling Law article 7-C controls, and the respondents’ time limitation for such application cannot be enforced. The fact that the notice under section 42-133 (a) of the Zoning Resolution did include specific reference to the application which was to be filed cannot be relied upon to diminish any rights the plaintiff had under section 15-021 of that Resolution.
*282 Accordingly, the motion by plaintiffs is granted to the extent of awarding plaintiffs summary judgment (CPLR 3212), declaring unenforceable the challenged deadlines for the filing of a "grandfathering” application in that those deadlines were not properly adopted, as discussed above. Defendant Sturz is directed to accept the plaintiffs’ grandfathering application as timely filed. In view of this determination, the cross motion by defendants is denied.

. Plaintiffs also have filed a separate application, not in issue here, to have the subject building designated as an IMD or interim multiple dwelling.

. In addition, under New York City Charter § 200 (a) (2), the Board of Estimate may approve, disapprove or modify zoning resolution amendments.