In the Matter of CHARLES GLEZEN, Petitioner, against TOWN BOARD OF RICHFORD et al., Respondents.

Supreme Court, Special Term, Broome County, August 19, 1948.

*Leland B. Taylor* for petitioner.

*Nathan Turk* for respondents.

SANTRY, J. This is an application under article 78 of the Civil Practice Act for an order declaring illegal and void a resolution and amendments thereto adopted by the respondents acting as the town board of the town of Richford, Tioga County, which provided for the construction of a building for the storage of public records within said town, and for a further order restraining the respondents from further action under such resolution.

It appears that at a meeting held on April 19, 1948, the town board of the town of Richford passed the following resolution: " Also motion made by Mr. Yaples and second by Mr. Ford that a building be made to house town records. Building committee appointed by S. R. Smith as follows, Charles Yaples and George Ford. Building to be fire proof and constructed of cinder blocks. Size to be 14 ft. by 26 ft. inside. Building to be built on town lot connected to town tool house. Construction to start as soon as possible. Motion carried."

At a meeting held on May 3, 1948, a resolution was adopted by the board modifying the original resolution to make the size of the building " about 16 ft. by 32 ft."

Subsequent to the adoption of these resolutions, and on the 3d day of July, 1948, the petitioner, who is a resident and taxpayer of said town, presented to the town board a petition signed by residents and taxpayers of the town, requesting said board to submit the proposition embodied in the resolutions to a vote of the people of the town. No action was taken on this petition and the proposition was not submitted to the voters.

After the filing of the petition the respondents commenced the erection of the building, laid the foundation, placed material on the site, and were proceeding with the construction when this proceeding was instituted.

The board did not cause detailed plans, specifications or estimates for such building to be prepared other than the specifications contained in the resolutions. The board did not call for sealed proposals nor award contracts for the performance of the work. The materials used in the construction of the building up to the present time were purchased by members of the town board, and the labor has been performed by regular employees of the town hired by them.

The petitioner challenges the legality of the respondents' action on the following grounds, viz.: (1) That the town now

has sufficient and adequate storage space for its public records, and the construction of the proposed building is unnecessary and unwarranted. (2) That the resolution of the board authorizing the construction of the building was illegal in that it did not provide for submitting the proposition to a referendum at a town election, pursuant to the provisions of section 220 of the Town Law. (3) That the respondents failed to cause detailed plans, specifications and estimates for such building to be prepared and filed, and failed to call for sealed proposals and award contracts for the work, pursuant to section 222 of the Town Law. (4) That the resolutions failed to specify or limit the cost of the project, pursuant to the provisions of section 223 of the Town Law.

The Education Law places upon the town board the duty of providing and maintaining fireproof rooms, vaults or receptacles for the safekeeping of public records, and of furnishing such rooms with fittings of noncombustible materials, the cost of which is a charge against the town. A penalty is provided for failure to comply. (Education Law, §§ 146, 150.)

The duty of determining whether existing facilities are adequate, and if not, what new or additional building or equipment is necessary to comply with the law, rests with the town board. Its judgment, if fairly and reasonably exercised, is final and conclusive. There is nothing in the papers before the court to show that the present provisions for the safekeeping of records are adequate. In fact, the contrary is evident. There is nothing to indicate that the proposed building would not be a proper and suitable structure in which to house and preserve the town records and to serve those purposes for which it is intended. It is a modest structure, reasonable in size and adequate, without being extravagant in cost. The contention of the petitioner that the proposed building is unnecessary or unwarranted cannot be sustained.

Prior to the enactment of the Local Finance Law, and of various harmonizing amendments to that and other laws, it would have been necessary to submit the proposition for construction of the building in question to the voters at a town election under section 220 of the Town Law. The purpose of the Local Finance Law was to co-ordinate and standardize all of the laws relating to or governing the financial affairs and management of all municipal corporations in the State. To this end it was provided in such law that all statutes, local laws, ordinances, rules and regulations, insofar as they relate to

matters therein contained, are superseded, and the Local Finance Law was constituted the exclusive law on such matters. (Local Finance Law, § 176.00.) By chapter 710 of the Laws of 1943, and by chapter 838 of the Laws of 1945, effective September 2, 1945, section 220 of the Town Law was amended by the addition of the following clause: '' Any expenditure approved pursuant to this section shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made. However, nothing contained in this section shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorized pursuant to this section.''

The effect of this amendment was, that the provisions of section 220, requiring the submission to a town election of a resolution to construct a building necessary for town purposes, could no longer be construed to prevent the financing of an expenditure for the construction of such a building pursuant to the Local Finance Law, even though the proposition had not been submitted to a referendum. It follows that the town board had the legal authority to authorize the construction of the building in question, provided the expenditure could be financed pursuant to the Local Finance Law.

Subdivision b of section 35.00 of the Local Finance Law provides that a bond issue of a town with proposed maturity of not more than five years shall be exempt from the requirement of a mandatory referendum. Subdivision b of section 107.00 of the same law specifies that no municipality shall issue bonds for a specific capital improvement or items of equipment unless it shall first have provided from current funds a sum of money sufficient to pay at least 5% of the estimated cost of such capital improvement or such equipment. Under these provisions the respondents can finance the expenditure necessary for the construction of the proposed building. All they will have to do is to issue bonds of not more than five years' maturity and provide from current funds at least 5% of the estimated cost.

In their answering affidavit the respondents state that the town has on hand surplus funds sufficient to pay the total cost of the building, and that it is the purpose of the respondents to use such funds to liquidate the entire expenditure. Under the provisions of paragraph 3 of subdivision a of section 107.00 of the Local Finance Law surplus funds are classed as current funds.

Under the law there is no limit on the maturity of the bonds that can be issued except that it must not exceed five years.

There is no limit on the amount of money that may be provided from current funds toward the payment of the cost of construction except that it must be at least 5% of the estimated cost. If the town has sufficient surplus funds to defray the entire cost there is no reason why the board may not provide from these funds a sum of money sufficient to pay 99% of the estimated cost and issue bonds for the balance to mature in one month, or even one day, and then pay the bonds at maturity from current funds also. Under such circumstances there is no valid reason, either in law or common sense, why the entire cost of construction should not be paid directly from surplus funds without resort to the fiction of a bond issue. The law does not require the doing of a useless thing, and the issue of a short term bond would serve no useful purpose. It would only glorify a technicality at the expense of common sense.

While the respondents had authority to authorize the construction of the building without submitting the proposition to a referendum, they were still bound under the provisions of section 222 of the Town Law to cause detailed plans, specifications and estimates for such building to be prepared, and to call for sealed proposals and award contracts for the performance of the work. They were also bound, under the provisions of section 223 of the Town Law, to specify in their resolution the amount to be expended for the proposed improvement. Until these things had been done they were without legal authority to proceed with the construction of the building.

That the respondents have acted in good faith there can be no doubt. There is nothing to indicate that any substantial or serious injury will result to the public interests from their actions. There is no claim that the work already done has not been properly and economically performed. No good purpose would be served by tearing down this work or abandoning the partly completed structure. The only illegality lies in the failure of the respondents, after authorizing the project, to take the proper measures to comply with the law relative to the construction of the building and establishing the amount to be expended. The interests of all persons concerned will be best served by permitting the respondents to supply the defects in their procedure so they may proceed with the completion of the building according to law. (See *Anger* v. *Galloway*, 61 N. Y. S. 2d 215.)

I, therefore, decide that the petitioner is entitled to an order restraining the respondents from proceeding with the construc-

tion of said building until they shall, by supplementary resolution, have fixed the amount to be expended for such building, and have caused detailed plans and specifications for such building to be prepared, and shall have caused estimates for the completion of said building to be prepared, and shall have called for sealed proposals and awarded contracts for the completion of said building, and until they have provided for the financing of the cost thereof pursuant to the Local Finance Law, and it is ordered accordingly, with $10 costs to the petitioner.