Foster, J.
The Town Board of the Town of Islip, Suffolk County, appeals from an order of the Appellate Division, Second Department, and the judgment entered thereon, which reversed an order of the Supreme Court, Suffolk County, in a condemnation proceeding.
The town, a township of the first class, attempted in this proceeding to condemn two lots, as shown on a map of Bayport Cove, for the purposes of a parking lot and bathing beach. The lots lie to the south of William Street in Bayport and are bounded on the east by the existing town bathing beach. Title to these lots was in two of the respondents, Jesse and David Fishman, as tenants in common. Across the street are other lots, upon which a house had been erected, and title to these lots is in the four respondents, that is Jesse Fishman and Hana, his wife, and David Fishman and Ada, his wife, as joint tenants with the right of survivorship.
The trial court awarded the sum of $12,500 for the value of the two beach lots, taken in their entirety, to the respondents Jesse and David Fishman, and the sum of $5,000 to all of the respondents as consequential damage to the lots across the street. In the Appellate Division the town appealed from so *325 much of the trial court decree as awarded consequential damages, and the owners appealed from the whole award. The Appellate Division held that the proceeding for condemnation as instituted by the town was jurisdictionally defective because a referendum was not held pursuant to sections 81 and 220 of the Town Law. Otherwise the Appellate Division affirmed the findings of the trial court.
The Town Board attempted to condemn the two beach lots by a resolution passed July 14, 1959, which provided that the cost of acquisition be paid pursuant to the Local Finance Law. Concurrently with this resolution the board passed a bond resolution for the issuance of town bonds in the sum of $12,000, the maximum maturity of which was not to exceed five years.
Section 81 of the Town Law provided that a proposition for the acquisition of property by a town may be submitted at a special or biennial town election, but it is section 220 of the Town Law, as it existed in 1959, and section 35.00 of the Local Finance Law, which are really pertinent to the controversy.
Section 220 of the Town Law provided, in part, as follows:
“Upon the adoption of a resolution therefor, subject to a permissive referendum, the town board may: * * *
11 4. Establish * * * public parking places, public parks or playgrounds, acquire the necessary lands therefor * * *.
t C PJ ^ S #
‘ ‘ Any expenditure approved pursuant to this section shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made. However, nothing contained in this section shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorized pursuant to this section.”
The foregoing section as it existed in 1959 embraced two significant amendments to the last paragraph, one made in 1943 (L. 1943, ch. 710, pt. 1, § 2619) and one made in 1945 (L. 1945, ch. 838, § 59). The 1943 amendment provided: “ Any expenditure approved pursuant to this section shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made. However, nothing contained in this section shall be construed to prevent the financing, in whole or in part, of any expenditure enumerated in this section pursuant to the local finance law.”
*326 The 1945 amendment changed and added to the last sentence of the paragraph as follows: 1‘ However, nothing contained in this section shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorized pursuant to this section ” (emphasis supplied).
It may be added that .section 81 of the Town Law was amended in the same respects.
Now to turn to the Local Finance Law. This was enacted by chapter 424 of the Laws of 1942 (eff. Sept. 1,1945). With certain exceptions not applicable here, section 35.00 of that act provides that a resolution adopted by a town under which the issuance of bonds with a maturity of not more than five years is authorized may be made effective immediately, but that a resolution authorizing bonds with a maturity of more than five years is subject to a mandatory referendum in a town of the second class. This section also contains this language, which must be given significance: “ c. The expenditure of money for which it is proposed to issue obligations shall not be subject to a permissive or mandatory referendum in any town.”
It should be noted that the enactment of the Local Finance Law took effect on September 1, 1945, and that the last amendment to sections 81 and 220 of the Town Law (prior to 1959), as heretofore quoted, took effect on September 2,1945, the day after the Local Finance Law became effective.
In view of the foregoing, the town argues here that, where an expenditure is to be financed by the issuance of town bonds, no referendum is necessary except that required by the Local Finance Law. The Appellate Division took another view, saying: “It is true that in certain instances section 35.00 of the Local Finance Law has eliminated the need for a referendum on the question of financing an improvement therein mentioned, where such improvement is to be financed pursuant to the provisions of that statute. But that statute is confined to the question of financing; it leaves unaffected and unchanged the provisions of sections 81 and 220 of the Town Law, which require a referendum on the question of whether the improvement or the acquisition should be undertaken at all (cf. Knapp v. Fasbender, 278 App. Div. 970).”
*327 This construction would appear to be erroneous because it quite evidently fails to take into account this language which is common to both sections 81 and 220 of the Town Law: ‘ ‘ However, nothing contained in this section shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorised pursuant to this section ” (emphasis supplied).
If any logical meaning is to be ascribed to this language, the term “ expenditure ” must be equated with the term “ acquisition ” where real property is to be acquired. And it would seem to follow plainly that, if the acquisition is to be financed under the Local Finance Law, its approval by referendum is not required under section 220 of the Town Law. What else can be meant by the language “which is not authorized pursuant to this section ” 7
Then there is subdivision “ c ” of section 35.00 of the Local Finance Law: 11 The expenditure of money for which it is proposed to issue obligations shall not be subject to a permissive or mandatory referendum in any town.”
It seems rather clear that the only logical purpose to be attributed to this language was a desire on the part of the Legislature to avoid the possibility of a double referendum. Hence, the various amendments to which we have called attention.
There are no cases precisely in point. The case cited by the Appellate Division by way of comparison — Knapp v. Fasbender (278 App. Div. 970) — certainly is not, for there no element of financing was involved. However, there is language in the memorandum decision which indicates that a different result might have been reached by the Appellate Division if the matter had been financed under the Local Finance Law. There is interesting discussion of the problem in the case of Matter of Glezen v. Town Bd. of Richford (192 Misc. 658), in which attention is called to section 176.00 of the Local Finance Law. This section provides, in substance, that all statutes, local laws, etc., insofar as they relate to matters therein contained, are superseded by the Local Finance Law.
The respondent owners argue "that neither sections 81 and 220 of the Town Law nor section 35.00 of the Local Finance Law are decisive of the necessity for a referendum, They cite subdi *328 vision 2 of section 64 of the Town Law, which reads in part as follows:
“ § 64. General powers of town hoards. Subject to law and the provisions of this chapter, the town board of every town: * * *
“ 2. Acquisition and conveyance of real property. May acquire by lease, purchase, or by condemnation in the manner provided by law, any lands or rights therein, either within or outside the town boundaries, required for any public purpose, and may, upon the adoption of a resolution, convey real property in the name of the town, which resolution shall be subject to a permissive referendum ’ ’.
It is by no means clear from the language cited that a referendum is required in a proceeding by a town to condemn real property. The practical construction given to this subdivision of section 64 by the State Comptroller some years ago is to the contrary. The Comptroller held that land may be acquired by a Town Board for public purposes of the town, but if the purpose is one to which section 220 of the Town Law applies the referendum provisions of that section are applicable unless financed pursuant to the Local Finance Law in which event section 35.00 of the latter statute applies (Op. St. Comp., 1948 [unbound], File No. 2992). We think this construction is more logical, and apparently it has been followed during the intervening years. No authoritative precedent has been cited to the contrary and we have been unable to find one.
The town raises the issue that consequential damages to parcels across the street from the condemned parcels were improperly awarded. However, the issue of conjunctive use was a question of fact resolved by the trial court and unanimously affirmed by the Appellate Division, and thus beyond our power of review. The constitutional issues attempted to be raised by the respondents, who did not appeal to this court, do not merit discussion.
The order of the Appellate Division should be reversed and that of Special Term reinstated, without costs.
Chief Judge Desmohd and Judges Dye, Fuld, Van Voobhis, Bubke and Scileppi concur.
Order reversed, etc.