OPINION OF THE COURT
Thomas E. Mercure, J.
Petitioners have instituted the within proceeding in the nature of mandamus pursuant to CPLR article 78 to compel the respondent* to call a special election for the consideration of a proposition for the purchase and establishment of a town park on Round Pond pursuant to Town Law § 81. Respondent moves to dismiss and petitioners cross-move for summary judgment for the relief demanded in the petition. The cross motion must be denied as premature, inasmuch as issue is not yet joined (see, CPLR 3212 [a]; 7804 [f]; Key Bank v Lake Placid Co., 103 AD2d 19, 25). The motion to dismiss shall be determined.
Town Law § 81 provides in pertinent part as follows:
"The town board may upon its own motion and shall upon a petition, as hereinafter provided, cause to be submitted at a special or biennial town election, a proposition:
"1. In any town * * *
"(d) To establish * * * public parks or playgrounds, acquire the necessary lands therefor, and equip the same with suitable buildings, structures and apparatus * * *
"4. Such petition shall be subscribed and authenticated, in the manner provided by the election law for the authentication of nominating petitions, by electors of the town qualified to vote upon a proposition to raise and expend money, in number equal to at least five per centum of the total votes cast for governor in said town at the last general election held for the election of state officers, but such number shall not be less than one hundred in a town of the first class nor less than twenty-five in a town of the second class. If such a petition be filed in the office of the town clerk not less than sixty days, nor more than seventy-five days, prior to a biennial town election, the proposition shall be submitted at such biennial election. If a petition be presented at any other time, a special election shall be called to be held not less than sixty days, nor more than seventy-five days after the filing of such petition.
*120 "Any expenditure approved pursuant to this section shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made. However, nothing contained in this section shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorized pursuant to this section. Any expenditure financed in whole from moneys appropriated from surplus funds shall not be subject to referendum.”
The petitioning association prepared and circulated a petition for referendum pursuant to Town Law § 81 on a proposition stated therein as follows: "a proposition for the establishment OF A PUBLIC PARK ON ROUND POND THROUGH ACQUISITION BY THE TOWN OF QUEENSBURY, FOR JUST COMPENSATION AND BY MEANS OF NEGOTIATION OR EMINENT DOMAIN, OF NOT LESS THAN 50 ACRES OF LAND AND BUILDINGS THEREON KNOWN AS PARADISE LAKE RESORT NOW OR FORMERLY OWNED BY SALVATORE RUSSO”.
The respondent’s motion to dismiss is based upon the contentions that (1) the proceeding is moot and/or untimely; (2) the petitions are insufficient as a matter of law due to lack of delineation of the property to be obtained, the use thereof or the price to be paid therefor, and (3) the petitioners have failed to show a "clear legal right” to the relief requested. I disagree.
In support of the contention that the proceeding is moot and/or untimely, respondent argues that in accordance with the provisions of Town Law § 81, the special election must be conducted not less than 60 nor more than 75 days following the filing of the petitions with the Town Clerk. Inasmuch as that time had passed prior to commencement of the proceeding, the analysis continues, the election cannot now be conducted in accordance with law and the petition is, accordingly, moot. Matter of Cox v Town of Haverstraw (40 Misc 2d 531), relied upon by respondent, would seem to support this contention. That case, decided by Supreme Court, Rockland County, in 1963, was not appealed and has been cited in but one reported decision in the last 24 years and then for a proposition unrelated to the issue before the court. Further, the decision in Cox sets forth no legal authority for the subject holding. I disagree with the holding, at least as applied in the instant proceeding, and choose not to follow it.
Because an article 78 proceeding in the nature of manda *121 mus cannot be commenced until the conditions precedent of demand and refusal have been fulfiled (see, Matter of Johnson v Town Bd., 85 AD2d 694), a Town Clerk could, consistent with Cox (supra), accept initiative petitions for filing and the Town Board could simply elect to do nothing, neither rejecting the petitions, refusing to conduct an election nor conducting an election, until the time for the election had passed, thereby circumventing the requirement of Town Law § 81 that the proposition be put before the electors. Last, the facts involved and the basis for the decision in Cox are distinguishable from those before me now. There, the Town Board passed a resolution authorizing construction of an incinerator and disposal plant and further authorizing an expenditure of $800,000 to be financed by a bond issue. The resolution was subject to a permissive referendum on petition under Town Law § 81. A petition was filed and accepted, but the Town Board took no action on it. The article 78 proceeding was commenced after the time fixed by law for the election on the proposition. The court’s holding was that the effect of the Board’s failure to challenge the petitions or to conduct the required election was that the Board’s resolution was and would remain ineffective. This being the case the petitioners gained the desired result without an election and the uncertainties attendant thereto.
The instant proceeding was commenced prior to four months following the November 25, 1986 refusal of the Town Board to conduct an election and is timely (see, CPLR 217).
It is true, as pointed out by respondent, that the proposition proposed to be submitted fails to specifically identify the property to be acquired, the type of public park purpose to be utilized, and the cost of the property to be acquired if affirmatively approved by the voters. It is also true that in Matter of Adams v Cuevas (68 NY2d 188) the Court of Appeals found an initiative petition deficient for failure to provide a plan to provide moneys and revenues sufficient to meet the proposed expenditures. However, the Adams case involved an initiative petition for a city charter amendment under Municipal Home Rule Law § 37. Subdivision (11) thereof contains the specific requirement that: "[n]o such petition for a proposed local law requiring the expenditure of money shall be certified as sufficient by the city clerk or become effective for the purposes of this section unless there shall be submitted, as a part of such proposed local law, a plan to provide moneys and revenues sufficient to meet such proposed expenditures.” Section 37 is, by its terms, applicable only to cities, and no counterpart is *122 found in the Town Law. Therefore, neither Adams nor the provisions of the Municipal Home Rule Law are of any assistance to the respondent. In fact, that the Legislature chose to define specific requirements for city charter amendment propositions and made no corresponding provision for Town Law § 81 propositions can be considered good evidence of its intention that no such requirements apply. In the absence of statutory or other legal authority for imposing the requirements which respondent would apply to the subject proposition (and none has been submitted by respondent or found as a result of the court’s research on the issue), respondent has a heavy burden of persuasion in its effort to establish that the proposition is deficient on its face.
A review of the provisions of EDPL article 2 is illuminating. The process of acquiring realty is initiated by a legislative determination that the public use would be served thereby. At this initial phase, the land to be acquired, the public use thereof and, most notably, the price to be paid need not be determined with any degree of specificity. Notice is then given, setting forth the proposed location of the public project, including any proposed alternate locations (EDPL 202), a public hearing is conducted, at which the municipal board outlines the purpose, proposed location or alternate locations of the public project and any other information it considers pertinent, which may but need not include maps and property descriptions of the property to be acquired and adjacent parcels, and the public is given an opportunity to be heard on the project (EDPL 203). Within 90 days following the conclusion of the public hearing, the Board must make its determination and findings concerning the proposed project and publish a brief synopsis thereof, including the following factors: (1) the public use, benefit or purpose to be served by the proposed public project; (2) the approximate location for the proposed project and the reasons for the selection of that location; (3) the general effect of the proposed project on the environment and residents of the locality, and (4) such other factors as it considers relevant (EDPL 204).
It should be noted that at the stage of making and publishing EDPL 204 findings, the municipality has made a determination to acquire property for public use, has deemed the project to be in the public interest, has conducted public hearings and has made findings. Nevertheless, even at this time the specific property to be acquired need not be identified, the public use thereof need not be delineated with any *123 degree of specificity, and no consideration need be made of the cost thereof or the method of financing of the same.
In the instant case, no determination, specific or abstract, has been made to acquire property. It is petitioners’ intention that this determination, positive or negative, be made by the electors at the election which the respondent refuses to conduct. Should the proposition carry, that determination to acquire property is no different than a Town Board’s initial determination under the EDPL. Delineation of the specific property to acquire, the specific use to be made thereof and the anticipated environmental impacts can and should follow according to the procedures set forth in EDPL article 2 and SEQRA (State Environmental Quality Review Act; ECL art 8). Compensation to be paid for the acquisition can also be determined as provided in the EDPL. Further, in accordance with the provisions of EDPL article 3, during the pendency of acquisition proceedings, the respondent can negotiate appropriate compensation with the owner.
The contention of the respondent that an environmental impact statement need be prepared prior to the election is also incorrect. Such a statement need be prepared on any action proposed or approved by an agency which may have a significant effect on the environment (ECL 8-0109 [2]). "Agency” is defined as any State or local agency, including any State department, agency, board, public benefit corporation, public authority or commission or any local agency, board, district, commission or governing body, including any city, county, and other political subdivision of the State (ECL 8-0105 [l]-[3]). Neither the petitioners nor the electors of the Town of Queensbury are an agency within the purview of SEQRA. "Actions” do not include official acts of a ministerial nature, involving no exercise of discretion (ECL 8-0105 [5] [ii]). To the extent that the respondent Board is required by law to conduct the election mandated by Town Law § 81, this action is ministerial. The landmark case of Matter of Tri-County Taxpayers Assn. v Town Bd. (79 AD2d 337, mod 55 NY2d 41) is not in point. In that case, the Town Board adopted three resolutions in July of 1979 dealing with the establishment of a sewer district and the construction of related facilities, including provision for a referendum on the subject. Both the Appellate Division and Court of Appeals held the adoption of the subject resolutions by the Board to constitute an action within SEQRA and the regulations promulgated thereunder (6 NYCRR part 617). In the later case of Matter of Programming *124 & Sys. v New York State Urban Dev. Corp. (61 NY2d 738), the court held that while preliminary steps in the planning of the 42nd Street Development Project had been taken, an environmental impact statement was not required until a "specific project plan for the development is actually formulated and proposed” (61 NY2d 738, 739, supra). In the instant case, the plan, involving no action of any agency, has not been formulated or proposed. It has, at most, been placed into consideration.
Last, the respondent contends that the proposition, if passed, will impose a severe financial burden upon the town since Town Law § 81 will permit the purchase only out of surplus funds or current revenues. This is not correct. The language of the last paragraph of Town Law § 81 (4), set forth on page 2 hereof, specifically authorizes the financing of the project pursuant to the local finance law (see, Matter of Town Bd. [Fishman], 12 NY2d 321). Even were this not so, Town Law § 81 is unequivocal in its authorization of a referendum by petition to acquire park lands. Any quarrel which the respondent has as the effect of the law is best addressed to the Legislature.
Based upon the foregoing, it is my finding that the proceeding is timely, that the proposition is sufficient and that petitioners have shown the requisite clear legal right to the relief demanded. The motion to dismiss is denied.
Pursuant to CPLR 7804 (f), the respondent shall have a period of 15 days following service upon it of a certified copy of the order to be entered hereon with notice of entry thereof within which to serve an answer to the petition. Leave is granted to the petitioners to thereafter renew the within motion for summary judgment, should they be so advised.

 The term respondent as used herein shall mean the respondent Town Board and its members in the aggregate.