■ In the Matter of NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC., et al., Appellants, v TOWN OF NORTH HEMPSTEAD et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a resolution adopted by the respondent Town Board of the Town of North Hempstead on March 15, 1988, which, *inter alia,* transferred the operation of the landfill of the respondent Town of North Hempstead to the respondent Town of North Hempstead Solid Waste Management Authority, the petitioners appeal, as limited by their brief, from so much of an order and judgment of the Supreme Court, Nassau County (O'Shaughnessy, J.), entered September 19, 1988, as, upon granting the respondents' cross motion for summary judgment, is in favor of the respondents and against the petitioners dismissing the petition.

Ordered that the order and judgment is affirmed insofar as appealed from, with costs.

The instant proceeding arises out of the proposed project by the respondent Town of North Hempstead to construct and operate a solid waste management facility in the Village of Port Washington. The respondent Town of North Hempstead Solid Waste Management Authority (hereinafter the Authority) was created for the purpose of reviewing, developing and operating the proposed facility *(see,* Public Authorities Law, art 8, tit 13-F). The facts and circumstances concerning the proposed project are more fully detailed in the companion appeal of *Matter of Residents for More Beautiful Port Washington v Town of N. Hempstead* (149 AD2d 266). On March 15, 1988, the Town Board adopted a resolution approving a Landfill Concession and Solid Waste Management Service Agreement (hereinafter the Landfill Agreement) which essentially transferred the operation of the town's existing landfill to the Authority. The Landfill Agreement provided that the Authority had "the exclusive right to receive, store, process and dispose of all [solid waste]", the "exclusive concession * * * to operate the [town's] Landfill" as well as "the exclusive right * * * to set, collect and receive the Tipping Fee[s]" associated with the landfill's operation. Tipping fees were expected to range between $12,000,000 to $16,000,000 per annum. The town committed itself to advancing loans to the Authority as needed, to transferring town employees to the Authority, and

to assisting the Authority in the collection of tipping fees. The Landfill Agreement also contemplated the construction, operation and maintenance of a solid waste incinerator facility and authorized the Authority to undertake this project on behalf of the town. The town relinquished any right to terminate the Landfill Agreement and the agreement, which had a 20-year term, also provided that neither it nor the Town Board's approval resolution required the consent or referendum of the voters.

Immediately after the Town Board adopted the resolution on March 15, 1988, approving the terms of the Landfill Agreement, the Authority adopted a resolution approving the purchase of a 460-acre site, known as the Morewood Property, for the proposed solid waste management facility. The site's $33,200,000 purchase price was secured by the income to be realized from the collection of the landfill's tipping fees and the issuance of bonds.

The petitioner, New York Public Interest Research Group, Inc., a not-for-profit environmental organization, and several of its officers and members, instituted the instant proceeding, *inter alia,* to review the Town Board's March 15, 1988, resolution and the Landfill Agreement executed by the Town Board and the Authority on the basis that they were adopted and approved without a permissive referendum or prior public notice and hearing as required under the Town Law § 64 (2); §§ 81, 90, 91 and 221. The Supreme Court dismissed the petition in its entirety. The court determined that Public Authorities Law, article 8, title 13-F, which created the Authority, and Laws of 1983 (ch 544), which expanded the town's powers with respect to the development of a solid waste management alternative to the use of landfills, superseded the Town Law requirements for permissive referenda, and public notice and hearings insofar as they apply to issues of solid waste management. Although we conclude that the petition herein was properly dismissed, we do so for reasons different from those relied upon by the Supreme Court.

At the outset, we conclude, contrary to the Supreme Court, that neither Public Authorities Law, article 8, title 13-F, nor Laws of 1983 (ch 544) expressly repeal the provisions for permissive referenda and public notice and hearings contained in the Town Law. In the absence of an irreconcilable conflict among these statutory provisions, they must be read together, since the Legislature is presumed to create laws in harmony with those in existence at the time of the new enactment (McKinney's Cons Laws of NY, Book 1, Statutes § 391).

We also conclude, however, that the Town Law provisions cited by the petitioner, namely, Town Law § 64 (2); §§ 81, 90, 91 and 221, are inapplicable to the matter at bar.

Town Law § 221 (1) provides, in pertinent part, that "[u]pon the adoption of a resolution therefor, subject to a permissive referendum * * * the town board may provide for the collection, separation, treatment, processing and disposal of solid waste * * * and for that purpose may construct, operate and maintain solid waste management facilities * * * acquire the necessary lands therefor, and purchase, operate and maintain all necessary appliances appurtenant thereto".

Town Law § 81 (1) (h) similarly permits a town "[t]o provide for the collection and disposition of garbage, ashes, rubbish and other waste matter in the town" by awarding contracts, by purchasing equipment, and/or by constructing a facility such as an incinerator plant; but a Town Board "may upon its own motion and shall upon a petition * * * cause [such a proposal] to be submitted at a special or biennial town election" (Town Law § 81). Notably, both of these Town Law provisions provide that the "expenditure approved pursuant [thereto] shall be paid for by taxes levied for the fiscal year in which such expenditure is to be made. However, nothing contained [therein] shall be construed to prevent the financing in whole or in part, pursuant to the local finance law, of any expenditure enumerated in this section which is not authorized pursuant to this section" (Town Law § 81 [4]; § 221 [3]).

The solid waste management operation to be managed by the Authority herein is to be financed initially by loans from the town, while its long-term expenses are to be paid from the tipping fees that it collects as well as by the issuance of bonds (see, Public Authorities Law § 2049-h). No expenditure in connection with the project is being financed by taxes levied for the fiscal year in which such expenditure is to be made. Thus, no referendum is required under Town Law § 221 (1), nor must a "proposition" be "submitted at a special or biennial town election" pursuant to Town Law § 81 (cf., Matter of Town Bd. [Fishman], 12 NY2d 321).

Additionally, Town Law § 64 (2) provides, inter alia, that a Town Board may "convey or lease real property in the name of the town, which resolution shall be subject to a permissive referendum". Under the Landfill Agreement at bar, the Authority lacks exclusive possession and control over the landfill site. The town retains a right of access to the landfill site, and it may continue to extract gases from the property. The town dictates the rules, regulations, operating and maintenance

procedures applicable to the landfill's maintenance and the town alone must approve any capital expenditures and repairs in connection therewith. Furthermore, the town is obligated to indemnify the Authority for all claims relating to the existing conditions at the landfill. This arrangement, which by necessity involves a long-term use of municipal land, is in the nature of a license rather than a lease or conveyance (cf., *Senrow Concession v Shelton Props.,* 10 NY2d 320; *Slutzky v Cuomo,* 114 AD2d 116). Since the nonexclusive possession of the land in this case is exercised by a coordinate municipal body and since the Authority, which is not obligated to pay rent, is unable to make any capital improvements or expenditures on the landfill site without prior written authorization from the town, there is no lease of municipal real property. Thus, a permissive referendum is not required under Town Law § 64 (2). Moreover, in view of the fact that the aforesaid statutory requirements for permissive referenda are inapplicable to the subject matter herein, Town Law §§ 90 and 91, which govern the procedural aspects of permissive referenda, are similarly inapplicable.

Finally, Town Law § 64 (7) provides, in relevant part, that a Town Board may: *"Except as otherwise provided by law * * * grant rights, franchises, permissions or consents for the use of the streets, highways, and public places or any part thereof * * * for any specific purpose authorized by law upon such terms and conditions as it may deem proper and as may be permitted by law. No such franchise, permission or consent shall be granted without a public hearing, notice of which shall be given by the publication of a notice thereof in the official paper at least ten days before the meeting"* (emphasis added). The Landfill Agreement in this case is exempt from these notice and hearing provisions since Laws of 1983 (ch 544) expressly authorizes the Town Board to grant a concession to the Authority such as that authorized in the Landfill Agreement. Mollen, P. J., Mangano, Kooper and Spatt, JJ., concur.