In the Matter of TRI-COUNTY TAXPAYERS ASSOCIATION, INC., et al., Appellants, v TOWN BOARD OF THE TOWN OF QUEENSBURY et al., Respondents.

Third Department, March 12, 1981

#### APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr.*, for appellants.
*Joseph R. Brennan, Town Attorney*, for respondents.

#### OPINION OF THE COURT

KANE, J.

In July of 1979 the respondent Town Board of the Town of Queensbury adopted three resolutions which dealt with the establishment of a sewer district and the construction of related facilities. Provision was also made for a referendum on the matter. Petitioners, a not-for-profit corporation and individual property owners residing in the district,

instituted a CPLR article 78 proceeding challenging the legality of the foregoing resolutions on various grounds. Their related application to enjoin the referendum was denied by Special Term and the proposition was narrowly approved by the voters on August 17, 1979. Thereafter, in September, 1979, the respondent town board passed two additional resolutions by which it gave assent to creation of the sewer district and authorized the issuance of bonds and revenue anticipation notes to finance construction. The recordation of necessary documents was completed the following month (see Town Law, § 209-g), and petitioners then commenced a second article 78 proceeding attacking the validity of all five resolutions. In dismissing both petitions, Special Term considered and rejected each of their contentions. On this appeal, however, petitioners press but one of their initial assertions in urging reversal, namely, that an environmental impact statement (EIS) was required before respondents could proceed with the contested project. While we basically agree with petitioners' argument concerning the need for such a statement, we do not believe that annulment of the resolutions is the appropriate relief.

The State Environmental Quality Review Act (SEQRA) contained in ECL article 8 mandates that all agencies prepare an EIS on any action they propose or approve which may have a significant impact on the environment (ECL 8-0109, subd 2). Since there is no dispute here that respondents constitute an agency and that installation of a sanitary sewer system may have an environmental impact, it is readily apparent that the conflict dividing the parties is whether some action has been taken which triggers the need for an EIS. The pertinent statute, ECL 8-0105 (subd 4), defines "actions" to include:

"(i) projects or activities directly undertaken by any agency; or projects or activities supported in whole or part through contracts, grants, subsidies, loans, or other forms of funding assistance from one or more agencies; or projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more agencies;

"(ii) policy, regulations, and procedure-making." In

addition, by regulation (6 NYCRR 617.2[b]), the term "actions" encompasses "planning activities of an agency that commit the agency to a definite course of future decisions". On the other hand, enforcement proceedings, ministerial acts and insubstantial maintenance or repair of existing facilities are excluded from the definition (ECL 8-0105, subd 5) and agencies are free to engage in "preliminary planning and budgetary processes necessary to the formulation of a proposal for action, provided those activities do not commit the agency to commence, engage in or approve such action" (6 NYCRR 617.3 [c] [1]).

Faced with this somewhat ambiguous language, and recognizing the variety of factual situations which might arise, it may often be difficult to identify the precise point at which an EIS must be prepared in order to satisfy the requirements of the statutory scheme. What is certain, however, is the legislative intent that environmental factors be given due consideration by agencies as early as possible in the decisional process (ECL 8-0103, subds 7, 8, 9; 8-0109, subd 4; cf. *Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y.*, 76 AD2d 215, 220; *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222). Although respondents maintain that the sewer project can be abandoned and will not be constructed if funding is not actually received from other governmental sources, it seems plain to us that the instant proposal has advanced far beyond the planning stage and, in keeping with the intent and spirit of SEQRA, we conclude that an EIS should have been prepared. Nevertheless, in deciding that the statutory command has not been fulfilled by respondents, we decline to invalidate the subject resolutions. It is sufficient in this case that respondents be directed to comply with SEQRA before proceeding with the proposed sewer system. Respondents may determine, upon completion of the EIS procedures, that the project should be modified or terminated, but it would serve no useful purpose to undo what has already been accomplished, particularly when, as here, the line between preliminary formulations and committed actions cannot be drawn with exactitude. Accordingly, the judgment of Special Term should be reversed and the petitions granted to the extent of directing

respondents to comply with ECL article 8 before taking any further steps or proceedings in connection with the construction of a sewer system in the Town of Queensbury (see *H.O.M.E.S. v New York State Urban Dev. Corp., supra*, pp 234, 235).

The judgment should be reversed, on the law and the facts, without costs; petitions granted to the extent that respondents are directed to comply with ECL article 8 before taking any further steps or proceedings in connection with the construction of a sewer system in the Town of Queensbury.

MIKOLL, J. (concurring in part and dissenting in part). As pointed out by the majority, the State Environmental Quality Review Act (SEQRA) and the regulations promulgated thereunder do not precisely define the point which an agency may not reach before an Environmental Impact Statement (EIS) must be prepared. Research indicates that this precise question is one of first impression in the New York courts. However, an examination of the purpose for which SEQRA was enacted, as revealed by its provisions, the regulations enacted thereunder and the Governor's Memorandum issued when legislation was signed into law, makes it abundantly clear that the spirit and intent of SEQRA demand that an EIS, or at least a draft environmental statement, was required to be prepared before the board passed the resolutions herein challenged by petitioners (ECL 8-0103, subd 7; 8-0109, subds 2, 4; 6 NYCRR 617.1; Governor's Memorandum, NY Legis Ann, 1975, p 438; see, also, *Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y.*, 76 AD2d 215).

Moreover, we note that the statute requires that when an agency determines "as early as possible in the formulation of a proposal for an action" that an EIS is required, it must prepare a draft environmental statement or terminate its review of the proposed action (ECL 8-0109, subd 4). The purpose of the draft statement is to relate environmental considerations to the inception of the planning process and to inform the public and other agencies as early as possible about proposed actions (ECL 8-0109, subd 4).

In the instant proceeding, the respondent town board has

prepared neither a draft environmental statement nor an EIS. Respondents argue that because funding from State and Federal agencies has not yet been committed to this project and because authorization for the project can be rescinded at any time prior to entry into binding legal commitments, the town is not yet committed "to a definite course of future decisions" and, thus, its activities do not constitute an "action" within SEQRA. We agree with the majority that this argument is without merit. The planning herein had already reached the stage where the Legislature intended that environmental considerations be taken into account and alternatives be discussed (see, also, 41 Albany L Rev 293, 304). However, while we agree with the majority that the procedures followed by the town board frustrated the intent and purposes of SEQRA, we conclude that the proper remedy is to declare the resolutions and other actions of the town board invalid and illegal.

Additionally, we do not agree with Special Term's finding that petitioners' challenge to resolution 319, which adopted provisions related to financing the project, is barred as untimely under the provisions of sections 80.00, 81.00 and 82.00 of the Local Finance Law. Moreover, even if petitioners' challenge to resolution 319 could be considered to be untimely, there was a timely and valid challenge to the other four resolutions, one of which adopted the same financing plan later readopted by resolution 319, and to the referendum. Since these four resolutions and the referendum should be declared null and void for failure to comply with the provisions of SEQRA, the foundation for resolution 319 is eroded and it is without effect as it was expressly conditioned on the valid establishment of Queensbury Sewer District No. 1.

The judgment dismissing the petitions should be reversed and the relief requested in the petition dated October 29, 1979 should be granted to the extent that (1) resolutions 228, 229, 230, 318 and 319 of the Town Board of the Town of Queensbury should be declared null and void, (2) the special town election held on August 17, 1979 to vote upon Queensbury Sewer District No. 1 should be declared null and void, and (3) the approval of the Comptroller for

establishment of Queensbury Sewer District No. 1 should be declared null and void.

CASEY and HERLIHY, JJ., concur with KANE, J.; MAIN and MIKOLL, JJ., concur in part and dissent in part in an opinion by MIKOLL, J.

Judgment reversed, on the law and the facts, without costs; petitions granted to the extent that respondents are directed to comply with ECL article 8 before taking any further steps or proceedings in connection with the construction of a sewer system in the Town of Queensbury.