OPINION OF THE COURT
Alexander, J.
The regulations promulgated by the City of New York (Executive Order No. 91, Aug. 24, 1977, entitled City Environmental Quality Review [CEQR]) as authorized by and in implementation of the State Environmental Quality Review Act (ECL art 8 [SEQRA]) require lead agencies to consider both the short- and long-term and primary and secondary effects of a proposed action in determining whether the action may have a significant effect on the environment so as to require the preparation of an Environmental Impact Statement (EIS). Since respondents’ environmental analysis failed to consider the environmental effects required by the regulations, the order of the Appellate Division should be reversed.
*362 I
This controversy arises out of the proposed construction of Henry Street Tower, a high-rise luxury condominium, on a vacant lot in the Chinatown section of New York City. This building is to be the first construction in the Special Manhattan Bridge District (SMBD),[1] a special zoning district created by the City of New York designed to preserve the residential character of the Chinatown community, encourage new residential development on sites requiring minimal relocation, promote the rehabilitation of existing housing stock, and protect the scale of the community (see, New York City Zoning Resolution § 116-00 et seq.; Asian Am. for Equality v Koch, 129 Misc 2d 67, 71-74). An application for a special permit for Henry Street Tower was submitted by the developer, Henry Street Partners, to the Department of City Planning and the Department of Environmental Protection, the colead agencies responsible for implementing SEQRA in the City of New York (see, CEQR 1 [k]). Following a thorough environmental review of the effects of the project on the physical environment, the agencies issued a conditional negative declaration asserting that the project will not have any significant effect on the environment if certain modifications were adopted by the developer (see, CEQR 1 [d]; 7 [b] [2]).[2] The modifications were accepted by the developer and the application for a special permit was thereafter approved by the City Planning Commission and the Board of Estimate.
A combined plenary action and article 78 proceeding was commenced by various members of the Chinatown community challenging the Board of Estimate approval of the special permit.[3] Their verified complaint and petition alleged viola *363 tians of SEQRA and CEQR, the SMBD regulations, the Uniform Land Use Review Procedure (ULURP), and the due process clause of the New York State Constitution and sought, among other things, a declaration that the special permit was null and void. After joinder of issue, respondents’ motion for summary determination (CPLR 409 [b]) and for summary judgment (CPLR 3212) was granted and petitioners’ cross motion for summary judgment was denied. The Appellate Division affirmed and petitioners were granted leave to appeal by this court.
As limited by their brief to this court, petitioners argue that the city’s environmental review was arbitrary and capricious because of the failure of the lead agencies to consider whether the introduction of luxury housing into the Chinatown community would accelerate the displacement of local low-income residents and businesses or alter the character of the community. Respondents contend that absent a determination that the proposed action will have a significant adverse impact on an area’s physical environment, SEQRA and CEQR do not require consideration of any social or economic impacts such as those asserted by petitioners.
II
In reviewing administrative proceedings in general and SEQRA determinations in particular, we are limited to considering "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]). As we stated in Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400, 416), "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively”. Thus, we do not decide here whether an EIS is required prior to the construction of Henry Street Tower or what environmental impacts may flow from that construction. The limited issue presented for our review is whether the respondents identified the relevant areas of environmental concern, took a "hard look” at them, and made a "reasoned elaboration” of the basis for *364 their determination (Matter of Jackson v New York State Urban Dev. Corp., supra, at p 417; Aldrich v Pattison, 107 AD2d 258, 265; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232). A conditional negative declaration is properly issued when the agencies have made a thorough investigation of the problems involved and reasonably exercised their discretion (Matter of Cohalan v Carey, 88 AD2d 77, 79, appeal dismissed 57 NY2d 672; H.O.M.E.S. v New York State Urban Dev. Corp., supra, at p 231).
SEQRA requires agencies subject to its provisions to adopt procedures necessary to implement the requirements of the statute provided that such "procedures shall be no less protective of environmental values [than the procedures provided in SEQRA]”, although procedures more protective of the environment can be adopted (see, ECL 8-0113 [3] [a]). Thus, the propriety of respondénts’ determination must be judged not only according to the requirements of SEQRA but also according to the regulations promulgated by the City of New York in CEQR to the extent those regulations are more protective of the environment.[4]
The initial determination to be made under SEQRA and CEQR is whether an EIS is required, which in turn depends on whether an action may or will not have a significant effect on the environment (ECL 8-0109 [2]; CEQR 7 [a]). In making this initial environmental analysis, the lead agencies must study the same areas of environmental impacts as would be contained in an EIS, including both the short-term and long-term effects (ECL 8-0109 [2] [b])[5] as well as the primary and secondary effects (CEQR 1 [g]) of an action on the environment. The threshold at which the requirement that an EIS be prepared is triggered is relatively low: it need only be demon *365 strated that the action may have a significant effect on the environment (see, Oak Beach Inn Corp. v Harris, 108 AD2d 796, 797; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232, supra).[6]
The dispute here concerns the reach of the term "environment”, which is defined as "the physical conditions which will be affected by a proposed action, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance, existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character” (ECL 8-0105 [6]; CEQR 1 [¶] [emphasis supplied]). Petitioners argue that the displacement of neighborhood residents and businesses caused by a proposed project is an environmental impact within the purview of SEQRA and CEQR, and the failure of respondents to consider these potential effects renders their environmental analysis invalid. Respondents contend that any impacts that are not either directly related to a primary physical impact or will not impinge upon the physical environment in a significant manner are outside the scope of the definition of "environment”, and that the lead agencies were therefore not required to investigate the potential effects alleged by petitioners.
Respondents’ limited view of the parameters of the term "environment” is contrary to the plain meaning of SEQRA and the city’s regulations and must be rejected. Initially, we note that there is no basis here to rely on any special expertise of the agency since all that is involved is the proper interpretation of statutory language (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 NY2d 539, 545; Kurcsics v Merchant Mut. Ins. Co., 49 NY2d 451, 459). It is clear from the express terms of the statute and the regulations that environment is broadly defined (ECL 8-0105 [6]; 6 NYCRR 617.2 [k]; CEQR 1 [f]; see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414, supra; Weinberg, Practice *366 Commentary, McKinney’s Cons Laws of NY, Book 11V2, ECL 8-0105, p 66) and expressly includes as physical conditions such considerations as "existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character”.[7] Thus, the impact that a project may have on population patterns or existing community character,[8] with or without a separate impact on the physical environment, is a relevant concern in an environmental analysis since the statute includes these concerns as elements of the environment. That these factors might generally be regarded as social or economic is irrelevant in view of this explicit definition. By their express terms, therefore, both SEQRA and CEQR require a lead agency to consider more than impacts upon the physical environment in determining whether to require the preparation of an EIS. In sum, population patterns and neighborhood character are physical conditions of the environment under SEQRA and CEQR regardless of whether there is any impact on the physical environment (see, Ulasewicz, Department of Environmental Conservation and SEQRA: Upholding Its Mandates and Charting Parameters For The Elusive Socio-Economic Assessment, 46 Alb L Rev 1255, 1266, 1282).
Turning to the specific allegations in this case, we conclude that under CEQR the potential displacement of local residents and businesses is an effect on population patterns and neighborhood character which must be considered in determining *367 whether the requirement for an EIS is triggered. A significant effect on the environment may be found if a proposed project impairs "the character or quality of * * * existing community or neighborhood character” (CEQR 6 [a] [5]) or impacts upon "existing patterns of population concentration, distribution, or growth” (ECL 8-0105 [6]; see, CEQR 6 [a] [10]). It is not relevant whether the proposed project may effect these concerns primarily or secondarily or in the short term or in the long term since the regulations expressly include all such effects (CEQR 1 [g]).
The potential acceleration of the displacement of local residents and businesses is a secondary long-term effect on population patterns, community goals and neighborhood character such that CEQR requires these impacts on the environment to be considered in an environmental analysis. The fact that the actual construction on the proposed site will not cause the displacement of any residents or businesses is not dispositive for displacement can occur in the community surrounding a project as well as on the site of a project. Indeed, this project is to be constructed on one of seven sites available for development in the SMBD and three of these sites are within one square block of the site of Henry Street Tower.[9] As we have indicated in a related context, land development impacts not only on the actual property involved but on the community in general (Berenson v Town of New Castle, 38 NY2d 102, 110). CEQR does not merely require that the displacement caused by the actual physical construction on this one site be considered. In fact, it specifically requires that "[f]or the purpose of determining whether an action [may have a significant effect on the environment], the action shall be deemed to include other contemporaneous or subsequent actions which are included in any long-range comprehensive integrated plan of which the action under consideration is a part” (CEQR 6 [b]; see, 6 NYCRR 617.11 [a] [11] [b]). Furthermore, as noted above, the statutory scheme requires the consideration of both secondary and long-term effects.[10] Thus, in considering the sec *368 ondary and long-term effects of this project on population patterns and neighborhood character, respondents must look to more than the potential effects of this one parcel and must consider the potential impacts on the surrounding community.
We do not decide whether these impacts will in fact flow from the construction of Henry Street Tower nor do we express any opinion on the merits of the proposed project. Our holding is limited to a determination that existing patterns of population concentration, distribution or growth and existing community or neighborhood character are physical conditions such that the regulations adopted by the City of New York pursuant to SEQRA require an agency to consider the potential long-term secondary displacement of residents and businesses in determining whether a proposed project may have a significant effect on the environment. Since respondents did not consider these potential effects on the environment in their environmental analysis, their determination does not comply with the statutory mandate and therefore is arbitrary and capricious.
Ill
Having concluded that the environmental analysis of respondents was arbitrary and capricious, it is necessary, to consider the appropriate remedy for their violation of the statutory mandate imposed by SEQRA. Although this issue was neither briefed nor argued in this court, we conclude, contrary to the conclusion tendered by the dissenters, that this issue is squarely governed by our recent decision in Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, modfg 79 AD2d 337).
In that case, the Town of Queensbury adopted three resolutions to establish a local sewer district as part of a larger sewer system, subject to the approval of voters at a special election. After the election, which resulted in a vote in favor of the proposition, a SEQRA challenge was commenced. The Appellate Division was unanimous in determining that there was a violation of SEQRA but was divided as to the appropriate remedy. The majority declined to annul the resolutions and the special election because "it would serve no useful purpose to undo what has already been accomplished” (79 AD2d 337, 339) and deemed it sufficient to direct the municipality to comply with SEQRA before proceeding with the project.
On appeal to this court, where the only issue raised was the *369 appropriate remedy, we reversed and declared the resolutions and special election null and void (55 NY2d 41, 43). This was required, we held, in order to not "clearly frustrate the objectives of SEQRA” (id., at p 47) and to further its "objectives and enforcement of [its] provisions” (id., at p 43) in accordance with the legislative direction to administer SEQRA to " 'the fullest extent possible’ ” (id., at p 46). Moreover, we noted that a disposition which would eliminate consideration of the required environmental effects by the town board at the time the action is initially authorized would relegate SEQRA’s mandates for environmental protection to an afterthought in contravention of the express legislative purposes (id., at p 47; see, Ruzow, SEQRA in the Courts, 46 Alb L Rev 1177, 1181-1182).
The instant case presents no different issue. Respondents have failed to comply with the requirements of SEQRA and CEQR and the appropriate remedy is to grant petitioners’ motion for summary judgment declaring the special permit null and void. The suggestion in the dissenting opinion that the omission here can be cured by "an amended negative declaration” (dissenting opn, at p 371) finds no support in the carefully drafted procedures of the statute and would effectively allow the municipality to comply with SEQRA and CEQR only as an afterthought following a successful challenge to their prior action. Such a result is directly contrary to our holding in Matter of Tri-County Taxpayers Assn. v Town Bd. (supra) and moreover, would contravene the important purposes underlying SEQRA. Indeed, it would allow a project to be initially approved without the benefit of a valid environmental review.[11] In order to further the strong policies served by SEQRA and to not frustrate its important objectives, we hold that the appropriate remedy here is the annulment of the special permit.
IV
Accordingly, the order of the Appellate Division affirming *370 Supreme Court’s grant of summary judgment to respondents is reversed and petitioners’ cross motion for summary judgment granted.

. In an unrelated action, we held the adoption of the SMBD regulations did not violate procedural due process or the notice provisions of the Uniform Land Use Review Procedures (see, Lai Chun Chan Jin v Board of Estimate, 62 NY2d 900, affg 92 AD2d 218). A separate constitutional challenge to the SMBD regulations and the special permit for Henry Street Tower is sub judice in the Appellate Division, First Department (see, Asian Am. for Equality v Koch, 129 Misc 2d 67).

. The modifications concerned noise mitigation measures, including closed windows and alternative means of ventilation, to reduce indoor noise levels and certain construction conditions to protect a designated landmark church located across the street from the project site.

. The plaintiffs-petitioners include the Chinese Staff and Workers Association, a nonprofit corporation whose members are Chinese restaurant and garment workers who live and work in Chinatown, the New York China *363 town History Project, a nonprofit organization dedicated to preserving the unique historical resources of Chinatown and several individuals who live and work in Chinatown. For ease of reference, the plaintiffs-petitioners will be referred to as "petitioners”.

. Although the dissenting opinion correctly points out that our holding "is not predicated [solely] on the requirements of SEQRA” (dissenting opn, at p 370), we do not decide whether a like result would ensue were SEQRA the controlling authority. That issue is simply not before the court in this case.

. ECL 8-0109 (2) provides, as relevant here:
"All agencies * * * shall prepare, or cause to be prepared * * * an environmental impact statement on any action * * * which may have a significant effect on the environment. Such a statement shall include a detailed statement setting forth the following:
"(b) the environmental impact of the proposed action including short-term and long-term effects” (emphasis supplied; see, 6 NYCRR 617.14 [Q [3]).

. In this regard, it is interesting to compare the parallel provision of the National Environmental Policy Act of 1969, which requires the preparation of an impact statement if the proposal will "significantly [affect] the quality of the human environment” (42 USC § 4332 [2] [C]), a demonstrably higher threshold requirement (see, Orloff, SEQRA: New York’s Reformation of NEPA, 46 Alb L Rev 1128). Additionally, an earlier proposed version of SEQRA would have required an EIS for an action likely to have a significant effect on the environment (see, Stevenson, Early Legislative Attempts At Requiring Environmental Assessment and SEQRA’s Legislative History, 46 ALB L Rev 1114, 1118).

. Again, comparison with the National Environmental Policy Act (NEPA) is instructive. An EIS is required under NEPA when a proposed Federal action will affect the quality of the "human environment” (42 USC § 4332) which has been interpreted to be limited to effects on the natural or physical environment (see, Image of Greater San Antonio v Brown, 570 F2d 517; Breckinridge v Rumsfeld, 537 F2d 864 cert denied 429 US 1061; Ulasewicz, Department of Environmental Conservation and SEQRA: Upholding its Mandates and Charting Parameters for the Elusive Socio-Economic Assessment, 47 Alb L Rev 1255, 1266). In contrast, specific elements of SEQRA’s definition of environment go beyond effects on the physical environment (see, infra, at pp 365-366).

. We find no statutory support for the proposition advanced in the dissenting opinion that there must be a "present effect on population patterns or community or neighborhood character” (dissenting opn, at p 370; emphasis in original). Rather, SEQRA’s requirement of the consideration of long-term effects (see, ECL 8-0109 [2] [b]) indicates that more than immediate or present effects on the environment must be considered. Nor is our recent opinion in Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400) authority to the contrary for the agency there expressly considered the "potential displacement” (id., at p 420) of residents in both the actual construction sites and in "the surrounding area” (id., at p 412).

. In the environmental analysis of the zoning change to create the Special Manhattan Bridge District, a negative declaration was issued on the ground that each project would be subject to CEQR.

. In this regard, the dissenters’ observation that this "project consists of one high-rise apartment — to be constructed on a vacant lot — which adds no more than 400 persons to an existing area population of approximately 40,000” (dissenting opn, at p 370) fundamentally disregards the clear requirement of the statutory scheme to consider more than short-term and primary effects on the environment.

. It is difficult to understand how an "amended negative declaration”, even if authorized, can retroactively validate an invalid environmental review without a subsequent review and determination in respect thereto by the City Planning Commission and the Board of Estimate. The dissenters would in effect uphold a special permit issued by the Board of Estimate on the basis of an invalid environmental analysis if the agency subsequently performs a valid environmental analysis even though the later valid environmental analysis is never presented to the Board of Estimate.