OPINION OF THE COURT
William H. Keniry, J.
This CPLR article 78 proceeding stems from the decision of the respondent New York State Department of Environmental Conservation (DEC) to issue a stream disturbance permit to the respondent Ulster County Department of Public Works (Ulster County) which allows construction of a new bridge on Clove Road across the Coxing Kill in the respondent Town of Gardiner (Town).
The petitioners are residents and owners of real property located along Clove Road. Clove Road is described by petitioners as a rural town highway of considerable beauty which traverses portions of Ulster County. Portions of Clove Road lie adjacent to the Mohonk Preserve, Inc., a privately supported nature preserve which is a Federal national historic landmark, and the Minnewaska State Park, a facility owned and operated by the Palisades Interstate Park Commission. The Coxing Kill flows parallel to Clove Road and runs under three bridges located on Clove Road. One of the bridges is maintained by Ulster County while the remaining two bridges fall under the jurisdiction of the Town of Gardiner. According to petitioners, the bridges are each one lane in width, have decks made of wooden planking, sit on abutments made of native stone and have a generally rustic appearance. Petitioners allege that Ulster County and the Town are planning to replace and upgrade the bridges with new bridges that will be two lanes wide, have a paved surface and be supported on precast concrete twin-box culverts.*
Respondent Ulster County submitted an application on March 17, 1988 to DEC for a permit under ECL article 15, title 5 to excavate or place fill into the Coxing Kill in connection with the replacement and reconstruction of the Clove Road bridge which is under the County’s jurisdiction. DEC issued the permit on May 5, 1988.
Respondents contest the propriety of DEC’s action since neither the County nor the Town submitted or prepared an *596 environmental assessment form (EAF) for the proposed bridge construction in compliance with the State Environmental Quality Review Act (SEQRA) (ECL 8-0101 et seq.) and the regulations promulgated thereunder (6 NYCRR part 617). Respondents contend that the proposed bridge replacements are actions which require compliance with SEQRA.
Respondents take the position that the bridge projects constitute the "replacement of a facility, in kind, on the same site” (6 NYCRR 617.13 [d] [1]) and as such, will not have a significant effect on the environment and do not require additional SEQRA review.
Initially the court notes that the petitioners seek relief with respect to the proposed reconstruction of all three bridges. Although the County and Town have expressed the need to replace all three bridges, the only project for which a permit has been requested by the County and which has been issued by DEC involves the bridge which is under the County’s jurisdiction. DEC objects in point of law to so much of the petition as seeks to enjoin DEC from issuing any further approvals with reference to the two other bridges.
Prohibition is an extraordinary remedy which is not favored by the courts but which should be exercised only in clear-cut situations where no other remedy is available (Matter of Schuyler v State Univ., 31 AD2d 273). The courts are reluctant to restrain public officials from performing their official duties (Poskanzer v Whalen, 47 AD2d 779).
In this case, the only official action taken by any of the respondents relates to the reconstruction of one bridge. Although future action concerning the other two bridges is apparently under consideration, there has been no official action taken which is ripe for judicial review. The petitioners are not aggrieved in this regard. When and if such action occurs, petitioners will possess adequate opportunity for judicial review of the administrative decisions. Accordingly, the court dismisses so much of petitioners’ first and second claims which seek relief pertaining to the two as yet not affected bridges.
The pivotal issue, as all parties concede, is whether or not the County’s replacement of the Clove Road bridge is an action which requires the preparation and filing of an EAF under SEQRA. The County, as the municipality responsible for the project, and DEC, which issued the necessary stream disturbance permit, both concluded that the bridge replace *597 ment was not a Type I action as defined in 6 NYCRR 617.12 but rather was a Type II action under 6 NYCRR 617.13. Accordingly, both respondents contend that an EAF was not required and that its respective decisions to approve and proceed with the project were appropriate and lawful.
Petitioners contend that the bridge under construction is so different in nature from the original bridge that the respondents’ decision to classify the project as a replacement of a facility in kind, a Type II action which obviates the need for SEQRA compliance, is arbitrary, capricious and contrary to law. Petitioners contend that, at the very minimum, the project is an unlisted action on a site contiguous to the Mohonk Preserve, a site listed on the National Register of Historic Places. Because of this the petitioners argue that the bridge project is a Type I action which mandates more comprehensive SEQRA review (6 NYCRR 617.12 [b] [9]).
In reviewing the DEC’s and the County’s determinations, "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively” (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416). The court must consider whether DEC and the County identified the relevant areas of environmental concern, took a "hard look” at such concerns and made a "reasoned elaboration” of the basis for their determination that the bridge replacement was a Type II action (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 363-364; Matter of Jackson v New York State Urban Dev. Corp., supra; Matter of Save the Pine Bush v City of Albany, 141 AD2d 949; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222).
The court’s review must" focus on the propriety of the respondents’ decision that the proposed bridge was a "replacement, in kind”, a Type II action which would not require the more expansive review required of a Type I action. There is no doubt that the bridge under construction is not identical to the bridge it replaces. The new bridge will be eight feet wider, will have a paved deck rather than a wooden deck and will be supported by concrete culverts rather than natural stone abutments. The court has not itself found any precedent nor have the parties submitted any authority which addresses the issue of what constitutes a replacement in kind. The term "in kind” is defined as "[o]f the same species or category. In the same kind, class, or genus. A loan is returned 'in kind’ when *598 not the identical article, but one corresponding and equivalent to it, is given to the lender” (Black’s Law Dictionary 707 [5th ed 1979]). Thus there is a distinction between the terms "in kind” and "in specie” which requires identical replacement (Black’s Law Dictionary 716 [5th ed 1979]). From the terminology used in 6 NYCRR 617.13, it is apparent that an identical replacement of a structure was not intended in order to qualify as a replacement in kind. Since that is so, the court must consider whether the respondents’ decision to classify the bridge project as a replacement in kind was reached after DEC and the County took a "hard look” at the environmental factors. It appears from the record that DEC and the County appropriately considered the impact of the new bridge upon the surrounding environment and have fulfilled their obligations under SEQRA. The record shows that the County’s civil engineer and DEC’s senior environmental analyst were well aware of the rustic nature of the existing bridge and approved a design which satisfied modern engineering and safety standards but which was the minimum replacement feasible to safely accommodate fire trucks, snowplows and school buses. The new bridge is not substantially different in size and although it does incorporate modern construction materials and design, the decision to classify the project as a replacement in kind is not, in this court’s opinion, arbitrary and capricious. Careful consideration was given. The court is not empowered to substitute its own judgment for that of the respondents under these circumstances.
Since the project was reasonably classified as a Type II action, no further SEQRA review was required before DEC issued the necessary stream disturbance permit and the County thereafter was able to proceed with the project. Although the bridge is located contiguous to the Mohonk Preserve, the current regulations only provide that an "unlisted” action which is contiguous to a National Register site be subject to full SEQRA review. The case of Matter of Houser v Finneran (99 AD2d 926) cited by petitioners was decided under a regulation which required that any action contiguous to a National Register site must be classified as a Type I action. The present regulation limits such classification to "unlisted” actions, which is not the case here.
The petition is dismissed, without costs.
One further issue must be addressed. The Town was properly served in this proceeding but has not appeared and is now in default. Petitioner moved for the entry of a default *599 judgment. If such judgment were issued, petitioners would receive relief which is contrary to this decision and would obtain an injunction preventing the demolition and reconstruction of the two Town bridges. Since this court has already dismissed, as premature, so much of the petition which sought relief related to the two bridges under the Town’s control, a default judgment is not appropriate as the issues presented against the Town were found not to be properly before the court. Petitioners’ motion for entry of a default judgment against the Town of Gardiner is denied, without costs.

 Upon information and belief, the construction of one new bridge is presently in progress.