■ In the Matter of SHELDON PLOTNICK et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents.—In a proceeding pursuant to CPLR article 78 to review certain resolutions of the Board of Estimate of the City of New York dated August 19, 1987, which approved the designation and rezoning of 11 sites in Queens, Kings, New York and Bronx Counties for the construction of facilities to house homeless families and single persons, the appeal is from so much of a judgment of the Supreme Court, Kings County (Hutcherson, J.), dated October 26, 1988, as annulled the resolutions concerning the proposed facilities at Commonwealth Avenue (Bronx County), East 119th Street (New York County), Neptune Avenue (Kings County) and 134th Street (Queens County), and the petitioners cross-appeal, as limited by their brief, from so much of the same judgment as denied their petition with respect to the resolutions approving the other 7 of the 11 proposed sites.

Ordered that the judgment is modified, on the law, by deleting from the first decretal paragraph thereof all words following the phrase "(Resolution No. 6 of August 19, 1987) is null and void" and adding to the third decretal paragraph thereof after the words "the Board of Estimate resolutions of August 19, 1987 approving" the words "the Neptune Avenue

Family Residence Center in Brooklyn, the 134th Street Family Residence Center in Queens"; as so modified, the judgment is affirmed, without costs or disbursements.

On this appeal we are asked to review the sufficiency of the New York City Board of Estimate's compliance with environmental review procedures in implementing a plan to construct 11 transitional residence facilities in various locations throughout the city to house an increasing number of homeless individuals and families seeking shelter. The City of New York is mandated by law and by consent decree to provide housing to every homeless family and individual who so requests *(see, McCain v Koch,* 117 AD2d 198; *Callahan v Carey,* Sup Ct, NY County, Aug. 26, 1981, Wallach, J.; *Eldredge v Koch,* 98 AD2d 675). The city asserts that as of January 1988 it was providing shelter for approximately 8,900 men, 1,300 women and 5,150 families in various locations and types of facilities throughout the city. While the city recognizes that a long-term solution to the problem lies in providing more units of permanent, affordable housing for low and moderate income people, there is also a need for emergency facilities such as shelters, and for transitional residences which are designed to afford a measure of privacy and to provide their residents with intensive social and welfare services and assistance in locating permanent housing. The appellants-respondents contend that these transitional residences will reduce the reliance on expensive hotel space for housing families, improve the quality of housing offered, and alleviate the overburdening of some communities by dispersing the homeless population throughout the city.

In order to implement this plan, the Human Resources Administration (hereinafter the HRA) submitted land use review applications for the proposed transitional residence sites to the Department of City Planning (hereinafter the DCP) pursuant to New York City Charter § 197-c which governs approvals of "[s]ite selection for capital projects". We find that this was the appropriate procedure and we disagree with the petitioners' contention that these separate, discrete construction projects involved the type of long-range plans for the future growth and development of the city which are governed by New York City Charter §§ 197-a and 197-b.

In order to comply with State and city environmental review procedures, the HRA prepared a project data statement for each proposed site, identifying the possible areas of environmental concern (Executive Order No. 91, Aug. 24, 1977, entitled City Environmental Quality Review [hereinafter

CEQR] § 1 [q]). These project data statements and the environmental issues identified therein were reviewed by staff of the DCP and the Department of Environmental Protection (hereinafter the DEP), the co-lead agencies designated by CEQR § 1 (k) for the purpose of implementing the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), to determine whether the proposals were "actions", as defined in CEQR § 1 (a), which "may have a significant effect on the environment" (CEQR § 2). With the exception of the proposal to locate a family residence center on Guy Brewer Boulevard in Queens, the co-lead agencies determined that each of the other 10 proposed actions would have no significant effect on the environment if modified in certain respects, and they prepared as to each a conditional negative declaration (hereinafter CND) in accordance with CEQR § 1 (d). As to the Guy Brewer Boulevard proposal, a full environmental impact statement was prepared.

The now completed land use review applications were submitted to the affected community boards and to one borough board which held hearings and without exception unanimously disapproved each of the projects (NY City Charter § 197-c [c]). On June 17, 1987, a public hearing was held before the City Planning Commission and dozens of residents, community leaders, local and State politicians and other interested persons stated their reasons for opposing the projects. The most frequently expressed objections were that the city's resources would be better spent on rehabilitating vacant in rem housing stock rather than on new construction, and that the burden of housing the homeless is not shared equally in the city but is borne primarily by the poorest, most densely populated neighborhoods, which are already saturated with social services facilities.

Following the hearings, the City Planning Commission prepared a report to the New York City Board of Estimate with respect to each of the proposed facilities. With the exception of the proposal to construct a family residence center on Commonwealth Avenue in The Bronx, a site which was deemed inappropriate, all of the proposed projects at issue on this appeal were recommended by the City Planning Commission for approval by the Board of Estimate, provided that the conditions of each CND were complied with.

The Board of Estimate held public hearings on August 13 and 14, 1987, and its members heard similar objections to those expressed before the City Planning Commission (CPC). On August 19, 1987, the Board of Estimate, by separate

majority votes, approved 11 resolutions to construct the facilities challenged herein (related resolutions concerning zoning changes were also approved for some of the sites).

The petitioners herein, which include three Borough Presidents, sundry community boards, and several district leaders, Members of the Assembly, Members of the City Council, homeowners and community organizations from the affected areas, brought the instant proceeding to review the resolutions of the Board of Estimate on various grounds. We find their arguments persuasive only as to 2 of the 11 resolutions, that is, those approving construction of transitional facilities for homeless singles on East 119th Street in Manhattan and on Commonwealth Avenue in The Bronx.

The HRA originally applied to construct transitional residence centers for families on East 119th Street and Commonwealth Avenue. After completion of the review process described above and issuance of CND's for the two projects, the CPC issued its reports to the Board of Estimate recommending approval of the East 119th Street project but concluding as to the Commonwealth Avenue site that the proposed family residence center "is an inappropriate land use for this location" (primarily because of inadequate open space for outdoor recreation in the area and overcrowded local schools). At some point prior to the hearings before the Board of Estimate, the HRA decided to modify these two projects to house homeless singles instead of families, and the co-lead agencies were directed to evaluate the environmental significance of these modifications. Modified CND's were issued as to both projects, concluding that there would be no significant impacts if the required mitigation measures were modified to provide for recreation space appropriate to adults rather than children.

However, the HRA did not consult with the City Planning Commission on these modifications and the two projects appeared on the calendars of the Board of Estimate of August 13 and 19, 1987 as proposed family residences. Just prior to the voting on August 19, 1987, and after the completion of the public hearings, the Commissioner of the HRA informed the Board members of the modifications and the amended CND's. This led to a dispute between some of the Board members and the Corporation Counsel regarding the proper vote margin for passage of the modified proposals.

New York City Charter § 62 (c) provides that: "No resolution or amendment of any resolution shall be passed at the same meeting of the board at which it is originally presented

unless by a three-fourths vote or shall be finally passed except at a meeting open to the public. Prior to a final vote by the board on any resolution or amendment of any resolution members of the general public shall be afforded the opportunity to be heard on such resolution or amendment".

In the Corporation Counsel's opinion, the modification of the two proposals from family to singles facilities was "minor" and required only a majority vote for approval since both resolutions had been previously presented at prior meetings of the Board. Some of the Board members disagreed, but when a vote was taken on a point of order, the Corporation Counsel's position was sustained by a majority vote of the Board. Both projects were approved as modified by a majority of the Board.

We agree with Supreme Court's conclusion that these two resolutions were improperly approved. We are persuaded from our review of this record that there are significant differences in the impacts on a community from the placement in its midst of housing for homeless singles as opposed to homeless families and we do not agree that such a modification is a minor one. Clearly, the HRA perceived enough significance in the modifications to request rereview by the lead agencies. This in itself severely undercuts the Corporation Counsel's position.

Given that the two proposals underwent what we find to be major modifications which "alter[ed] the essential nature of the project[s]", and they were first presented to the Board on August 19, 1987, they each required a three-fourths vote for approval (*Matter of Lower E. Side Joint Planning Council v New York City Bd. of Estimate*, 56 NY2d 717, 719). The simple majority votes by which they were approved were, therefore, improper. We also note that New York City Charter § 62 requires an opportunity for public comment on any resolution prior to a final vote, and that this requirement was violated since the two proposals were modified and approved after the conclusion of public hearings.

We have recently held that a sufficient environmental review was conducted with respect to the proposed facility on 134th Street in Queens (*Matter of Briarwood Community Assn. v City of New York*, 147 AD2d 639), and that holding is binding on this appeal under established principles of stare decisis. As for the other eight Board of Estimate resolutions approving transitional residence facilities for the homeless in The Bronx, Brooklyn and Queens, we find from our review of the record that the appellants-respondents have complied with the provisions of SEQRA, CEQR and the uniform land use

review procedures of the New York City Charter. The appellants-respondents identified the relevant areas of environmental concern, took a "hard look" at them and made a "reasoned elaboration" of their decisions *(see, Aldrich v Pattison,* 107 AD2d 258, 265; *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232). Specifically with regard to the proposed Neptune Avenue site, we disagree with the court's conclusion that the environmental review failed to sufficiently consider the potential impact of the facility on existing population patterns, neighborhood character and an adjacent historic building, since all of these concerns were addressed in the CND.

Contrary to the petitioners' argument, we find no fatal defect in the environmental review process in this case resulting from the designation of the DEP and the DCP as co-lead agencies for the purpose of conducting the initial determination of significance or nonsignificance. Unlike the recent case of *Matter of Coca-Cola Bottling Co. v Board of Estimate* (72 NY2d 674, 682), wherein the DCP issued the final determination of nonsignificance and the Board of Estimate was improperly "insulated from consideration of environmental factors", in the case at bar it is clear that the Board of Estimate analyzed and considered all of the potential adverse impacts of the proposed sites and, after considerable discussion at well-attended public hearings, made a rational decision to approve the proposals as recommended by the co-lead agencies. Consequently, we find that the instant case is distinguishable from and not controlled by the ruling in *Matter of Coca-Cola Bottling Co. v Board of Estimate (supra).*

Lastly, we hold that the Board's approval of certain zoning map changes with respect to some of the projects was proper *(see, Nehrbas v Incorporated Vil. of Lloyd Harbor,* 2 NY2d 190). Mollen, P. J., Mangano, Thompson and Rubin, JJ., concur.