■ MANHATTAN VALLEY NEIGHBORS FOR PERMANENT HOUSING FOR THE HOMELESS et al., Appellants, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Respondents.— Judgment of the Supreme Court, New York County (Ira Gammerman, J.), entered February 26, 1990, dismissing the CPLR article 78 petition, unanimously affirmed, without costs.

Petitioners seek to annul a Board of Estimate decision approving a plan to rehabilitate city-owned buildings in the vicinity of 109th Street in Manhattan, the Manhattan Valley area. Petitioners also seek to substitute their own proposal which would convert all of the city's in rem housing in the neighborhood into permanent housing for the homeless. Petitioners' position is unusual in that they contend that, rather than contesting the establishment of erstwhile homeless families in the neighborhood, they would welcome the families, but on a permanent basis. The subject housing under the city's plan would provide transitional residences for some 71 families who would be moved out of shelters and hotels into the subject housing, for up to 13 months, after which these families would be rotated out and into permanent housing, as other transitional families are rotated in. Petitioners contend that the proposed action requires an environmental impact statement. The purported significant adverse environmental impact arises, according to petitioners' arguments, not from the mere addition of families to the neighborhood, but from the transitional nature of their residency.

We note that the city will not be constructing new buildings, and the only significant alteration will be for purposes of

setting aside portions of the existing premises, so as to provide facilities for social services relative to the transitional nature of residences. As such, the city properly has classed the project as a Type II action (6 NYCRR 617.13 [d] [1]) since it represents a replacement of a facility, in kind, on the same site, rather than one of the Type I (6 NYCRR 617.12) listed actions. Unlike Type I actions, Type II actions are deemed to present no significant adverse environmental consequences and are exempt from SEQRA and CEQR requirements, mandating the filing of environmental impact statements.

We do not agree with petitioners that the current project, in the context of petitioners' challenge, poses a significant potential for adverse environmental consequences. It is well established that our inquiry is limited to a review of whether respondents acted illegally or arbitrarily and capriciously and abused their discretion *(Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363). Petitioners are not persuasive that local residents and businesses will be displaced by transitional housing more so than by permanent housing. We have noted that it is not "evident that finding shelter for homeless families is a sort of action contemplated by SEQRA such than an EIS is mandated" *(Midtown S. Preservation & Dev. Comm. v City of New York,* 130 AD2d 385, 388). In order to constitute replacement in kind, exact replication is not required; a replacement in kind will be effected if a new facility has a substantially similar use to the old facility *(Matter of Anderberg v New York State Dept. of Envtl. Conservation,* 141 Misc 2d 594; *compare, Matter of Plotnick v City of New York,* 148 AD2d 721, *lv denied* 74 NY2d 601).

Accordingly, the Board of Estimate did not act illegally in exempting this project from the filing of an environmental impact statement, and its designation as a Type II action was not arbitrary and capricious or an abuse of discretion. Nor are we persuaded that the particular project is an unlisted action which should be held to the same standards of Type I actions for which environmental impact statements are presumptively required. Finally, petitioners do not demonstrate that the co-lead agency, rather than the Board of Estimate, issued a final determination in contravention of *Matter of Coca-Cola Bottling Co. v Board of Estimate* (72 NY2d 674). The Board of Estimate in the instant action held its own hearing and made its own findings, albeit with the advice and recommendations of the lead agencies. Concur—Sullivan, J. P., Milonas, Rosenberger, Ellerin and Rubin, JJ.