VA Rt. 6 LLC v Town of Wawayanda Planning Bd. (2025 NY Slip Op 51634(U))

[*1]

VA Rt. 6 LLC v Town of Wawayanda Planning Bd.

2025 NY Slip Op 51634(U)

Decided on October 14, 2025

Supreme Court, Orange County

Williams, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 14, 2025
Supreme Court, Orange County

VA Rt. 6 LLC and REAL DEAL MANAGEMENT, INC., Petitioners, 
 For a Judgment Pursuant to CPLR Article 78

against
Town of Wawayanda Planning Board, Respondent.

Index No. EF004471-2025

Robert S. Rosborough IV
Peter R. Bryce 
Attorneys for Petitioners 
Whiteman Osterman & Hanna LLP
One Commerce Plaza 
Albany, New York 12260
David W. Bavoso
Bavoso Law
Attorneys for Respondent
P.O. Box 3139
19 E. Main St.
Port Jervis, New York 12771

E. Loren Williams, J.

The following papers were read on petitioners' CPLR Article 78 petition challenging the Town of Wawayanda Planning Board's (the "Town" or "Board") denial of respondents' application for site plan approval of a warehouse project:
Petition/Affidavits/Exhibits NYSCEF Doc # 1-38
Answer/Memo of Law/Exhibits NYSCEF Doc # 45-49
Reply Memo/Exhibits NYSCEF Doc # 51-54
BACKGROUND AND PROCEDURAL HISTORY
Petitioners are the owners of property located on the west side of U.S. Route 6 in Slate Hill, New York, within the Town of Wawayanda. Petitioners challenge the Town of Wawayanda's Planning Board's (the "Town") April 10, 2025, denial of a special permit for the project, despite the Town's June 26, 2024, determination that the project would have no adverse impact on the environment.
This action was commenced on May 9, 2025. Respondent filed its answer and memorandum of law on June 18, 2025. 
On April 11, 2025, this Court issued a comprehensive decision in a prior case brought by residents against the Town challenging its issuance of a negative declaration under the State Environmental Quality Review Act ("SEQRA") (see Kangethe v. Town of Wawayanda, et al., Index No. EF009060-2024, April 11, 2025 (Williams, J)). That decision examined the SEQRA review process at length, to which the parties are referred for a full recitation of that history to avoid repetition. Ultimately, the Court found that the Town had taken a hard look at the environmental issues and was not arbitrary and capricious in its issuance of the negative declaration. These issues included Town determinations, as petitioner argues, in direct contrast with the Town's subsequent decision denying the special permit. 
The Project
The proposed project is called the "RDM Rt. 6 Logistics Center" (the "Project"), located on Route 6 in the Town of Wawayanda. The Project is located on a 41 acre site approximately ¾ of a mile from the intersection of Route 17M and Route 6, and is near the CPV Valley Energy Center power plant, also in the Town of Wawayanda. Residential uses border the property to the northwest and northeast, predominantly along Kirbytown Road. The project is located within the Town's MC-1 (Mixed Commercial) Zoning District, which is an allowed use subject to both site plan approval and a special use permit. 
RDM proposes a 399,695 square foot warehouse facility, with 20,000 square feet of office space and other site improvements. The Project will have 250 parking spaces, 90 loading docks, 137 trailer storage spaces, and stormwater management facilities. 
Determination of Non-Significance
On June 26, 2024, the Town issued its Determination of Non-Significance (commonly called a "negative declaration") pursuant to SEQRA, which essentially concluded the Town's environmental review under SEQRA, though site plan review continued before the Planning Board. 
Without repeating the lengthy history outlined in the Court's prior decision, a few of the Town's decisions bear on the issues here. 
First, in its decision, the Town concluded the Project was consistent with the Town's updated Comprehensive Plan, which seeks to locate commercial and industrial uses in the MC-1 zoning district along the Route 6 corridor. No party disputes the project meets all existing zoning requirements set out in the Zoning Code.
Second, the Town concluded that any impacts to aesthetic resources and views were adequately mitigated. Specifically, the Town identified two "moderate to large" impacts: 
1. The Project maybe visible from publicly accessible vantage points; and
2. The activity in which viewers are engaged while viewing the Project will include routine travel by residents and others, including travel to and from work and recreational or tourism-based activities.
The Town concluded these impacts would not be a significant adverse impact because the Project is an allowed use under the Town Zoning Code, subject to the site plan and special permit process, and these impacts are reasonably expected and permitted in this area. Further, the Project would be consistent with the other nearby commercial and industrial developments, including a power plant. The Project would not be visible from nearby public scenic or aesthetic resources. The developer submitted visual simulations, which satisfied screening requirements. The Town further demanded a number of mitigation measures, including architectural changes, vegetation, and landscaping to minimize visual impacts, which are all set forth in detail in the negative declaration (see NYSCEF Doc No. 5).
With respect to traffic and transportation, the Town identified two moderate to large environmental impacts:
1. Projected traffic increase may exceed capacity of existing road network; and
2. The proposed action may alter the present pattern of movement of people or goods.
The developer conducted a Traffic Impact Study (at the Town's request) that determined the project would not have a significant adverse impact on traffic. The NYS DOT also issued a conceptual approval, with conditions. The Town recommended further traffic mitigation improvements for the project including changes to nearby intersections, which the developer did not apparently oppose. 

Finally, the Town concluded the Project was consistent with community character and the Town's community plans, specifically its Zoning Code and Comprehensive Plan. The project is located in a commercial and industrial zoning district and meets the bulk requirements of the Zoning Code. The Town noted that the Project is also consistent with the goals of the Comprehensive Plan, which sought to improve and expand commercial uses. The Project is surrounded largely by other commercial and industrial uses, such as warehouses, the CPV power plant, and a commercial area along Route 6. 
Noting the residential uses along Kirbytown Road, the Town imposed mitigation measures including retaining existing vegetation where possible, choosing a building color that will blend into the vegetation, installing berms, and planting taller trees. The Town believed that with this mitigation, the majority of the building that faces the residential area will be completely screened within five years. 
Special Permit Review
Following the June 26, 2024, determination of non-significance, the Town next moved to its review of the application for a special permit, the final step in the planning process. According to the June 26, 2024, meeting minutes, Board members affirmed that "this board has reviewed and addressed all potential impacts. There are no outstanding unmitigated impacts."
On July 24, 2024, the Planning Board held a public hearing on the special permit. Petitioner's representative opened the hearing by noting the "project fully complies . . . with all local zoning regulations. It's important to note that in most cases it is several times more compliant than . . . allowable." (NYSCEF Doc No. 26, pg. 7). He highlighted how the project was actually much farther from lot lines and smaller than otherwise allowed.
Members of the public registered their concerns at the hearing. They predominantly raised issues of viewpoint impacts (albeit some mentioning their view of the power plant nearby), noise generated from the project, impact on property values, the fact of warehouses [*2]being built in a previously rural area, requests for a balloon test, and questioning the Planning Board members' commitment to the community. 
The Board held another public hearing on August 28, 2024, where members of the public provided comments on the project. Members of the public raised continued concerns, including about traffic, aesthetic concerns about the short-term landscaping impacts, general opposition to the number of warehouses going in throughout the Town, continued requests for a balloon test, reduction in property values, sound, and questioning the Boards' negative declaration on environmental impact. 
In response to some questioning, Planning Board Chair Razzano acknowledged that the Planning Board could only put certain conditions on special uses and does not necessarily empower it to just reject applications (see NYSCEF Doc No.28, p. 70). Another Board member later acknowledged "we're given the zoning, the zoning board sets the zone. And whatever is allowed in that zone, we can't just simply say no, we don't want a warehouse, go on your way" (NYSCEF Doc No. 28, p. 95). He further told the public that if they wanted to change the zoning, they needed to go to the Town Board for a legislative change.
The Board decided to leave the hearing open to gather additional information, including a balloon study demanded by the public. Petitioner's representative noted that a balloon study will be largely misinformation because it will not take into account the landscaping and property changes in the plan. Nonetheless, the Board, acknowledging the repeated requests from the public, asked that a balloon study be done notwithstanding the stated issues.
The balloon study report, dated September 24, 2024, reflected a series of images of seven balloons from different vantage points conducted on September 17. The study conceded, however, that this study was made on existing topography and without any of the screening and landscaping mitigations. The report concluded that its results confirmed the prior visualizations that were submitted with the SEQRA review. The project would be partially visible from locations along Route 6 and Kirbytown Road during leaf-off conditions. The report's author (hired by petitioner) opined it would be consistent with, or more attractive than other industrial uses nearby. 
On September 25, 2024, the Board conducted its final public hearing. The applicant/petitioner offered the balloon report as well as information responding to concerns raised at the prior hearings. The residents continued to echo the same concerns as outlined in prior meetings, including aesthetics, noise, air quality, and the presence of other warehouse proposals and projects in the area. Many residents continued to question the Board's prior SEQRA determinations and a purported need for more environmental review. This time, local attorney Michael Sussman spoke at the meeting and offered a rationale for the Board to deny the application on grounds that the "health of the community may be compromised" (NYSCEF Doc No. 29, pg. 28).
The Board raised concerns about the noise study that was provided, noting that it did not include analysis of nighttime noise, given representations of 24 hour operations of the facility. The Board ultimately closed the public hearing portion of the process, as many of the comments appeared to be similar to those at prior meetings.
Board's Resolution Denying Special Permit
On April 10, 2025, the Board denied the special use permit under Wawayanda Town Code sec. 195-76 (available at 
https://ecode360.com/12930522#12930618). That code outlines the Planning Board's obligations for special permit reviews, with a number of different factors. [*3]It states:
The Planning Board, in reviewing the site plan, shall consider its conformity to the Town of Wawayanda Comprehensive Plan and the various other plans, laws and ordinances of the Town. Conservation features, aesthetics, landscaping and impact on surrounding development as well as on the entire Town shall also be part of the Planning Board review. The Board, in acting upon the site plan, shall also be approving, approving with modifications, or disapproving the special use permit application connected therewith.
The Planning Board in its decision, based its denial on a number of factors. For example, the Planning Board was concerned about the size of the proposed building and the height of the building from the ground. The Planning Board noted it had asked the applicant to set the building lower in the ground, a proposal that the applicant rejected. 

With respect to visual characteristics, the Board was compelled by the balloon study that "made clear that the top of the proposed building would not only be clearly visible from the surrounding properties, but in a few cases, obstruct homeowners' views from their backyards." The Board was concerned about the proximity of the building to neighboring properties (notwithstanding that it was within allowable setbacks). The Board concluded that the building will "protrude above treetops" and was not "compatible with natural and man-made surroundings" under Town Code sec. 195-76[A]. 
With respect to setbacks, the Planning Board wanted the applicant to set the property even farther back from the allowable setbacks, particularly with respect to Route 6. While the applicant did change the corner to make the setback line "smoother" the Board found the applicant did not adequately address the setback issue.
The Board then found that the property was uniquely situated next to a residential neighborhood, unlike other commercial projects under review. The Board found the petitioner failed to provide an updated noise study and the Board was concerned about noise impacts to the neighborhood. The Board was concerned about the visual impacts of the building to the surrounding residential neighborhood.
With respect to community impacts, the Board found the proposed construction would cause a strain on local infrastructure, though do not explain how.
DISCUSSION
A "CPLR article 78 proceeding may be summarily determined 'upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised'" (Davis v Peterson, 254 AD2d 287, 287 [2d Dept 1998] (quoting CPLR 409[b]). In an Article 78 proceeding challenging an agency determination, the court's review, is "limited to the arguments and record adduced before the agency" (Matter of Kaufman v Inc. Vil. of Kings Point, 52 AD3d 604, 607 [2d Dept 2008]). 
"In reviewing administrative proceedings in general . . . we are limited to considering 'whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion'" (Chinese Staff and Workers Ass'n v City of New York, 68 NY2d 359, 363 [1986] (quoting CPLR 7803 [3])). It is not the "role of the courts to weigh the desirability of any action or choose among alternatives" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]). 
A. Special Permit Review
Respondent argues that its determination denying the special permit was fully in [*4]compliance with its review under the Town Code, as it found that petitioners failed to adhere to multiple criteria, including noise, visual impact, the size of the proposed structure, and its proximity to a residential neighborhood. The Court determines that the respondent's conclusions were arbitrary and capricious and not supported by substantial evidence.
As the Court of Appeals has explained:
The classification of a particular use as permitted in a zoning district is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood as opposed to a variance which would allow an otherwise prohibited use. While the [Planning] Board still retains some discretion to evaluate each application for a special use permit, to determine whether applicable criteria have been met and to make commonsense judgments in deciding whether a particular application should be granted, such determination must be supported by substantial evidence
(Matter of Twin County Recycling Corp. v Yevoli, 90 NY2d 1000, 1002 [1997] [internal quotation and citation omitted]). A Planning Board may not based its decisions on "generalized community opposition" and a decision denying a special permit must be supported by "substantial evidence" in the record (id.). The burden of proof for the applicant seeking a special use permit "is lighter than that on an applicant seeking a variance, the former only being required to show compliance with any legislatively imposed conditions on an otherwise permitted use" McGinn v Zoning Bd. of Appeals of Town of E. Hampton, 2023—06612, 2025 WL 2609377, at *1 [2d Dept Sept. 10, 2025] [internal modifications and quotations omitted]). 

The Planning Board's review is limited to a decision that the use, "although permitted, is not desirable at a particular location" but "may not be based upon general objections to the special use or conclusory findings that the proposed use itself is undesirable" (Matter of Holbrook Assoc. Dev. Co. v McGowan, 261 AD2d 620, 621 [2d Dept 1999]). Moreover, a determination that "neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious and mandates reversal" (Matter of Campo Grandchildren Tr. v Colson, 39 AD3d 746 [2d Dept 2007] [internal quotation and citation omitted]).
Here, the Planning Board appears to have bowed exclusively to community pressure that accelerated after its detailed and comprehensive negative declaration. The respondent reviewed all of the same concerns during the SEQRA process, that it claimed were fully mitigated, and then relied on the same concerns to deny the special permit. But this project fully complies with all required zoning and indeed is less than it would be allowed to build under applicable zoning (see Hampton Vil., LLC v Zoning Bd. of Appeals of Inc. Vil. of Southampton, 239 AD3d 651, 653 [2d Dept 2025]). It is, as the Board admits in its negative declaration, fully consistent with the Town's own Comprehensive Plan for this area. It is located next to a Town-approved power plant with cooling stacks exceeding 100 feet in height, far higher than the proposed project. The Board appears to have bowed to community pressure rather than any substantial evidence of community impact. Indeed, any such impact was contemplated during the legislative process that passed both the Town Comprehensive Plan and the Zoning. 
Though respondent correctly observed that the SEQRA determination does not pre-determine all matters, Troy Sand & Gravel Co., Inc. v Town of Nassau, 101 AD3d 1505, 1509 [3d Dept 2012] does not compel denial of the petition. In that case, the State Department of [*5]Environmental Conservation was the lead agency for the SEQRA review of a mining use, which did not preclude the Town's own review of the project. Here, however, the same agency denying the permit is the one who conducted the environmental review from which it is now departing on limited support. The same agency must generally adhere to its own precedent absent substantial evidence warranting a change (see Campo, 39 AD3d at 746; see e.g Matter of Church of Jesus Christ of Latter-Day Saints v Planning Bd. of Town of Clifton Park, 260 AD2d 769, 769 [3d Dept 1999] [holding that denial of special permit due to potential water and traffic problems was arbitrary and capricious where it conflicted with the agency's own prior negative declaration]). 
Here, the record suggests that the Planning Board's true reason for denying the permit despite its prior precedent was improperly based on generalized community opposition and specifically highlighted community concerns in its resolution (see 853-855 McLean, LLC v City of Yonkers, 237 AD3d 1189, 1189 [2d Dept 2025] [City Council's denial of special permit was reversed where, despite prior Planning Board approval, the City Council emphasized community opposition]. Moreover, many of the alleged noise and visual concerns were essentially an "objection to the nature of the use itself" of a warehouse (Matter of Holbrook Assoc. Dev. Co. v McGowan, 261 AD2d 620, 621 [2d Dept 1999] [reversing denial of special permit to restaurant expansion to include a bar, a conditionally permitted use, as the objections to noise, outdoor congregation, and others were objection to nature of use itself]). 
The Court is mindful that some combination of the public or the members of this Board are straining against respondent's prior well-reasoned negative declaration and more generally with the Town's legislative enactments. This includes the Town's enactment of a Zoning Code that created this zone, a bulk table that allows buildings of this size and uses, and a Comprehensive Plan that specifically sought to include these uses in this area, notwithstanding the existing residential areas. Presumably, these laws were passed in open session where residents could attend and object. The laws were passed nonetheless. The caselaw now requires that respondent adhere to its prior determinations and the Town zoning code. Any departure from these prior decisions, or denial of a special permit, must be supported by substantial evidence. The Town Board has the power to amend the Town Code and disallow warehouses in this area. Until then, the Planning Board may not simply deny an otherwise permitted use due to community opposition.
The Planning Board's determination is reversed as arbitrary and capricious and the matter is remanded to the Planning Board to issue the special permit to petitioners. 
B. Open Meetings Law
Petitioners allege, as an alternative ground, that the Planning Board's denial of its special use permit application should be annulled because the Town violated the Open Meetings Law by failing to provide a copy of the agenda to the meeting showing the resolution would be discussed. Given the Court's determination above granting the petition, however, this alternative ground need not be considered as it is now moot.
The parties remaining contentions, if any, though reviewed and considered in full, are denied as moot, irrelevant, or academic as they do not alter the Court's determinations herein.
Accordingly, it is:
ORDERED that the petition is GRANTED and the Town of Wawayanda Planning Board's April 9, 2025, determination denying petitioners' special permit is annulled as arbitrary and capricious and the matter is remitted to the Planning Board to issue the special permit to petitioners. 
The foregoing constitutes the Decision and Order of the Court.
Dated: October 14, 2025
E N T E R:
HON. E. Loren Williams, J.S.C.