■ In the Matter of Franz Leichter et al., Appellants, v New York State Urban Development Corporation, Respondent.—Judgment of the Supreme Court, New York County (Stanley Parness, J.), entered January 25, 1989, dismissing appellants' CPLR article 78 proceeding, unanimously affirmed, without costs.

Appellants argue that a hearing, purportedly conducted pursuant to section 16 (2) of the New York State Urban Development Corporation Act ([UDC Act] L 1968, ch 174, § 1, as amended; McKinney's Uncons Laws of NY § 6266 [2]) on September 30, 1987, fails to satisfy the requirements of EDPL 206 (C) and therefore fails to fulfill the requirements for exemption from compliance with article 2 thereof. The gravamen of appellants' position is that the amendments to the subject 42nd Street development project originally proposed in 1981 have materially affected the public justification for its completion. Therefore, they contend that the original hearings conducted by respondent in 1984 and approved by the Court of Appeals as complying with EDPL requirements *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400) are insufficient with respect to the amended plan and that new hearings are required pursuant to EDPL 203. It is apparent that appellants seek to have the project reviewed de novo.

The amendments to the plan involve (1) an expansion of the proposed use of a site originally designated as a wholesale facility mart in the 1981 plan to encompass a commercial office tower and (2) a provision for the sequential acquisition of sites as they become available for development rather than

the simultaneous acquisition originally contemplated. Appellants maintain that these modifications require further hearings and the issuance of new determinations and findings by respondent pursuant to EDPL 204.

Appellants' position is based on a selective reading of the Eminent Domain Procedure Law. They argue that the law "contemplates that a Project will not be altered significantly once the condemning authority's determination and findings are published." They cite the provisions of EDPL 205 for the proposition that "after hearing and publication, the condemning authority shall have the right to make amendments or alterations in its proposed public project 'only in the event that further study of field conditions warrant[s]' [emphasis supplied]." They conclude, "Unless the proposed amendment accommodates such 'field conditions', the amendment requires further review under the EDPL."

The provision of EDPL 205 which petitioners fail to cite is the sentence which states, "Such amendments or alterations shall not require further public hearings nor invalidate any acquisition for the proposed public project." It is clear, therefore, that this section governs only those amendments in the plan which may be instituted without further hearings. It does not govern the situation, in issue upon this appeal, where a plan is modified and a public hearing is held concerning the modification. Contrary to the suggestion contained in appellants' brief, the statute does not bar changes, even significant changes, in a plan once the condemning authority has published its findings, and it is significant that appellants cite no statutory or judicial authority which indicates otherwise.

Appellants next argue that the modifications in the plan alter the public purpose of the original project, therefore requiring respondent to conduct further proceedings and issue new findings. This argument, however, overlooks the limited role that the Legislature has assigned to the courts under the statute. Pursuant to EDPL 207, judicial review is limited to whether "a public use, benefit or purpose will be served by the proposed acquisition" (EDPL 207 [C] [4]). Since it is not open to question that the plan is designed to achieve a public purpose *(Matter of Jackson v New York State Urban Dev. Corp., supra,* at 424), judicial inquiry can proceed no further on this point.

The only question before this court is whether respondent's determination to proceed with its redevelopment plan was made in compliance with statutory procedures (EDPL 207 [C] [3]). As noted, the statute does not bar changes in a public

project subsequent to the publication of the findings and determination of the condemning authority pursuant to EDPL 204. However, in view of the omission of specific procedures to be followed upon modification, it is the responsibility of the courts to fill the interstices in the statutory scheme. In this regard, we agree with Supreme Court that it is sufficient that the agency hold a hearing, limited to consideration of the amendments in the plan, during which the factors enumerated in EDPL 204 (B) are open to discussion. This procedure is sufficient to promote the statutory purpose "to establish opportunity for public participation in the planning of public projects necessitating the exercise of eminent domain" (EDPL 101).

Finally, appellants argue that respondent may not take advantage of the exemption afforded by EDPL 206 (C) because the agency is in violation of section 16 (2) (f) of the New York State Urban Development Corporation Act, requiring that the agency modify its plan "in the manner provided for the initial filing of such plan in paragraph (a) of this subdivision". It is clear, however, that this section contemplates only modifications in the plan which arise out of the initial public hearings. Like the Eminent Domain Procedure Law, the UDC Act is silent on the subject of the procedure to be followed when a plan is modified subsequent to its initial approval. But even if, as appellants urge, UDC Act § 16 (2) (f) were applicable to the facts before us, it requires only that respondent file a copy of the amended plan in its office and in the office of the County Clerk and provide a copy to the Mayor, planning commission and local community board. Significantly, none of those entities opposes the modified plan. The filing requirement is obviously designed as a notice provision, and in view of the fact that appellants have not only received notice of the amendment but have also been afforded an opportunity to be heard in opposition thereto, they have not demonstrated prejudice resulting from respondent's alleged failure to strictly comply with the filing provision.

Our holding is further supported by a consideration of the practicalities surrounding a project of this scale. As appellants point out in their brief, during the time that this project has been delayed due, in no small part, to attendant litigation, "the real estate market in Midtown Manhattan dramatically changed." In addition, several developers withdrew from the project for financial and other reasons. It is clear to this court that if respondent is required to start the hearing process anew, conditions will very likely have changed again by the

time the amended plan emerges from the approval process with the attendant legal challenges, thereby extending the review procedure ad infinitum. The hearing requirements set forth in the Eminent Domain Procedure Law and the Urban Development Corporation Act are designed to solicit community involvement in the planning process, not to serve as a vehicle by which public development can be effectively foreclosed. Concur—Kupferman, J. P., Carro, Ellerin, Smith and Rubin, JJ.