■ In the Matter of STEPHEN F. WILDER et al., Appellants, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Respondent.—Judgment of the Supreme Court, New York County (Stanley Parness, J.), entered January 24, 1989, dismissing appellants' CPLR article 78 proceeding, unanimously affirmed, without costs.

Upon this appeal, appellants attack the revised 42nd Street development project, contending that the modifications require respondent to subject the amended plan to full review pursuant to the State Environmental Quality Review Act (SEQRA; ECL art 8), including the preparation of a new environmental impact statement.

The amendments to the plan which are said to require de novo environmental assessment are: (1) the change in use of a site originally designated as a wholesale computer and apparel mart to include its use as a general wholesale mart or, if that proves infeasible, an office building (the height, bulk and location of the structure remaining the same), and (2) the phased acquisition and construction of building sites rather than simultaneous acquisition and construction. In our opinion, these changes are minimal, and appellants' attempt to augment their significance is unconvincing. Appellants have not stated any way in which the use of a building as a wholesale mart differs materially from the use of an identical structure as an office building. (Parenthetically, we might point out that some of the operations of this court are housed in an office building which is otherwise devoted to use as a wholesale housewares mart.) Rather, they base their objection on the adverse impact that the use of the site as an interior furnishings mart might have on the International Design Center of New York, located in Long Island City, and the potential detriment to economic activity in that community.

This effect, which appellants argue requires an environmental impact study, is both remote to the project in question and is an economic consequence as opposed to an environmental

effect. The term "environment" is defined in SEQRA as "the physical conditions which will be affected by a proposed action, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance, existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character" (ECL 8-0105 [6]). Simply put, an economic impact is not a physical condition within the contemplation of the statute.

The Court of Appeals decision in *Chinese Staff & Workers Assn. v City of New York* (68 NY2d 359), upon which appellants rely, is distinguishable. In that case the court required an assessment of the impact which construction of a high-rise luxury condominium in Chinatown would have on the displacement of the indigenous population and the character of the immediate neighborhood, factors specifically enumerated in the statute. There is no suggestion in the opinion that any consideration need be given to the remote effect that potential economic competition might have on an entirely different community located at a considerable distance. As this court has previously stated, consideration need only be given to such environmental consequences as are reasonably likely to result from the proposed action *(Coalition Against Lincoln W. v City of New York,* 94 AD2d 483, 491-492, *affd* 60 NY2d 805).

We do not read the opinion of the Second Circuit in *City of Rochester v United States Postal Serv.* (541 F2d 967 [1976]), a case decided under the National Environmental Policy Act of 1969 (42 USC § 4332) and the Intergovernmental Cooperation Act of 1968 (42 USC § 4201 [since repealed]), as supporting the proposition advanced by appellants. The Intergovernmental Cooperation Act specifically required the Federal Government to consider economic development in planning Federal projects (42 USC § 4231 [c]). It is significant that the Postal Service had direct control over the planned new facility and the old main post office which the City of Rochester feared would simply be abandoned, with the potential loss of 1,400 jobs. In the instant matter, the pertinent statute does not mandate consideration of economic factors. Moreover, it is unknown what use will be made of the subject premises or, assuming their use as a wholesale mart, whether the goods and services offered will compete with any activities at the Industrial Design Center of New York. Any asserted economic impact is therefore speculative.

As to the sequential acquisition of building sites and the likelihood of staggered construction as sites are acquired, it is reasonably clear that the simultaneous construction contem-

plated in the original plan (adopted Oct. 4, 1984) was rendered impractical by events which took place during the period that various legal challenges wound their way through the courts, culminating in the project's approval in *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400 [1986]). As appellants state in their brief, "After the 1984 Findings Statement was filed, the Time *[sic]* Square area underwent an unprecedented building boom." As a result, respondent "was never able to negotiate a deal with developers consistent with its originally approved Plan." On the same grounds stated in *Matter of Leichter v New York State Urban Dev. Corp.* (154 AD2d 258 [decided herewith]), it would be most inappropriate to permit an unsuccessful challenge to a public benefit project to nevertheless thwart its completion by requiring the condemning authority to review the project de novo because of circumstances resulting from delay attendant on the litigation. Such a result renders a baseless challenge as effective as a meritorious one in defeating public development projects and cannot be tolerated. As the Court of Appeals observed in *Matter of Jackson v New York State Urban Dev. Corp. (supra,* at 425), "The EIS process necessarily ages data. A requirement of constant updating, followed by further review. and comment periods, would render the administrative process perpetual and subvert its legitimate objectives".

The supplemental environmental review conducted by respondent on the effect of sequential acquisition is entirely reasonable under the circumstances and consistent with legislative intent that "the protection and enhancement of the environment, human and community resources shall be given appropriate weight with social and economic considerations in public policy" (ECL 8-0103 [7]). As the *amicus* brief on behalf of the State Department of Environmental Conservation points out, its amended regulations, promulgated in 1987, are intended to be consistent with the opinion in *Jackson (supra)* and, to the extent they may be applicable to the facts of this case, as appellants contend, they support respondent's action in conducting a supplemental environmental impact assessment. Concur—Kupferman, J. P., Carro, Ellerin, Smith and Rubin, JJ.